******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BETSY SCALORA *v.* JEFFREY SCALORA
## (AC 40641)

Lavine, Keller and Bishop, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court, and the plaintiff cross appealed, from the judgment of the trial court resolving several of the parties' postdissolution motions. The dissolution judgment had incorporated a settlement agreement of the parties, which contained a nonwaiver clause and required the defendant to pay the plaintiff periodic alimony, to pay for certain expenses related to the education and activities of the parties' children, and to maintain at his own expense an insurance policy on his life for the benefit of the plaintiff and the children. The plaintiff filed a motion for contempt, alleging, inter alia, that the defendant had failed to pay the court-ordered alimony and to maintain a life insurance policy, and sought reimbursement for, inter alia, certain expenses incurred for the benefit of the parties' children. The defendant filed three special defenses, alleging that the motion for contempt was barred by the doctrines of laches and equitable estoppel, and that the plaintiff had waived her right to proceed with the motion. Subsequently, the defendant filed a motion for contempt, alleging that the plaintiff had improperly claimed their younger daughter as a dependent for federal income tax purposes, in violation of the settlement agreement. The defendant also filed a motion for an order requesting that the court give him credit toward any sums found owing to the plaintiff for one half of the cost he previously had paid in connection with the wedding of the parties' older daughter. Following a hearing on the motions, the trial court issued a memorandum of decision rejecting the defendant's defenses and granting in part the plaintiff's motion for contempt with respect to the defendant's nonpayment of alimony and failure to maintain life insurance. The court denied the remainder of the plaintiff's motion for contempt but issued remedial orders requiring the defendant to reimburse the plaintiff for, inter alia, the cost incurred to maintain life insurance coverage on the defendant and for certain expenses related to the education and activities of the parties' children. The court granted in part the defendant's motion for contempt and held the plaintiff in contempt for improperly claiming the dependency exceptions, but denied the defendant's motion for an order claiming credit for one half of the cost of the wedding. *Held*:

1 The defendant could not prevail on his claim that the trial court abused its discretion in rejecting his defenses of laches, equitable estoppel, and waiver without first fully considering the elements of each; that court properly determined that the nonwaiver provision in the parties' separation agreement, which provided that either party's failure to seek enforcement of the agreement would not constitute a waiver of his or her right to do so at any later time, barred all of the defendant's defenses, as that provision entitled the plaintiff to file her motion for contempt at any time without regard to the issue of delay, and the defendant failed to make any claim that the nonwaiver provision was unenforceable or that the parties either occupied unequal bargaining positions or engaged in sharp dealing.

2. The trial court improperly took judicial notice of the reasonable cost of clothing in ordering the defendant to reimburse the plaintiff for expenses she had incurred relating to the parties' younger daughter: although the approximate price range of various categories of clothing may be common knowledge and the actual price of specific articles of clothing may be readily ascertainable, the reasonableness of an allowance for the periodic purchase of such items cannot be deemed so well known that evidence to prove it is unnecessary, as the reasonableness of an allowance for clothing depends on a wide range of factors and is subject to reasonable dispute, and, therefore, whether a particular clothing allowance is reasonable is not within the knowledge of people generally in the ordinary course of human experience and was not the proper

subject matter of judicial notice, especially without giving the parties an opportunity to be heard; moreover, even if it was improper for the court to take judicial notice of the cost of a meal plan at the university attended by the parties' daughter at a point in time outside of her attendance dates, that fact played no role in the court's determination of the defendant's food expense arrearage and could not have prejudiced the defendant.

3. The trial court did not abuse its discretion in denying the defendant's motion for an order seeking credit toward the claimed arrearages for one half of the cost of the wedding of the parties' older daughter; that court's finding that the plaintiff lacked substantial income and therefore had not agreed to share the cost of the wedding was not clearly erroneous, as the plaintiff testified that she had been struggling with significant debt around the time of the wedding and that she was in no position to pay for one half of the cost of the wedding given her annual income at the time, which was the same amount as the cost of the wedding venue alone, and the defendant's claim that the plaintiff induced him to believe that she would credit her share of the wedding toward what the defendant owed her was contradicted by the plaintiff's testimony that she never agreed to allow the defendant to do something else in lieu of making support payments and never agreed to waive any of the defendant's obligations under the separation agreement.

4. The trial court abused its discretion in finding the defendant in contempt for failing to maintain a life insurance policy at his own expense in accordance with the parties' settlement agreement; although the evidence demonstrated that the plaintiff had purchased, with the defendant's consent, an insurance policy on his life when the defendant's own policy had lapsed in 2010, the record was not clear whether the defendant also had maintained his own life insurance policy during the relevant postjudgment period or whether the policy purchased by the plaintiff had supplemented or replaced the defendant's own policy, the trial court expressly acknowledged in its memorandum of decision that there were unanswered questions with regard to the defendant's maintenance of a life insurance policy, and, therefore, the court could not have properly concluded that the plaintiff had sustained her burden of proving by clear and convincing evidence that the defendant had failed to maintain a life insurance policy at his own expense in violation of the settlement agreement.

5. This court declined to review the defendant's claim that the trial court abused its discretion by establishing a schedule for making payments on the arrearage without first obtaining evidence regarding his ability to pay; the parties focused almost entirely on the merits of the motions at the hearing and did not present any evidence regarding their financial circumstances at that time, and neither party filed an updated financial affidavit or made any objection at the time of the orders that the court had not considered their financial circumstances.

6. The defendant could not prevail on his claim that the trial court abused its discretion in declining to award him attorney's fees in connection with his motion for contempt; the defendant's sole argument was that he should be awarded attorney's fees if the plaintiff prevailed in her cross appeal on her claim for attorney's fees, and his claim necessarily failed in light of this court's determination that the plaintiff's claim was not reviewable.

The plaintiff's claims, raised in her cross appeal, that the trial court abused its discretion in declining to award her attorney's fees in connection with her motion for contempt and challenging the trial court's interpretation of a certain provision of the parties' separation agreement were not reviewable, the plaintiff having failed to brief the claims adequately.

Argued December 4, 2018–officially released May 7, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Hon. John D. Brennan*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Gerard I. Adelman*, judge trial referee,

granted in part the plaintiff's motion for contempt and issued certain remedial orders, and granted in part the defendant's motion for contempt and motion for order, and the defendant appealed and the plaintiff cross appealed to this court. *Reversed in part*; *further proceedings*.

*John A. Barbieri*, with whom was *Claudia R. Barbieri*, for the appellant-cross appellee (defendant).

*Jeremiah J. Morytko*, for the appellee-cross appellant (plaintiff).

*Opinion*

BISHOP, J. In this marital dissolution action, the defendant, Jeffrey Scalora, appeals from the judgment of the trial court resolving several of the parties' postdissolution motions. The defendant claims that the court improperly (1) rejected his defenses to the motion for contempt filed by the plaintiff, Betsy Scalora; (2) took judicial notice of certain facts not in evidence in ordering him to reimburse the plaintiff for certain education related expenses incurred for the parties' children;[1] (3) denied his motion for an order awarding him credit toward the unreimbursed expenses; (4) found him in contempt for failing to maintain a life insurance policy; (5) ordered him to pay certain sums found owing to the plaintiff without taking into consideration his ability to pay; and (6) declined to award him attorney's fees in relation to his motion for contempt.

The plaintiff cross appeals from the court's judgment, claiming that the court (1) abused its discretion in declining to award her attorney's fees and costs in relation to her motion for contempt and (2) improperly implied a reasonableness standard into the parties' separation agreement, which had been incorporated into the judgment of dissolution. We agree with the defendant's second and fourth claims and decline to address the merits of the plaintiff's claims due to her failure to brief them adequately. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following procedural history is relevant to our resolution of the appeal and cross appeal. The court, *Hon. John D. Brennan*, judge trial referee, dissolved the parties' marriage on February 8, 2008. At the time, the parties' two daughters were eighteen and fifteen years old, respectively. The court found that the parties' marriage had broken down irretrievably and accepted, as fair and equitable, their written separation agreement, which it incorporated by reference into the dissolution judgment.

Pursuant to the separation agreement, the defendant was required, inter alia, to pay the plaintiff periodic alimony in a prescribed amount, to pay for the plaintiff's medical insurance premiums for a period of time, to pay for certain activity and education related expenses for the children, and to maintain, at his own expense, an appropriate life insurance policy on his life for the benefit of the plaintiff and the children. The agreement also contained a nonwaiver clause providing that either party's failure to seek enforcement of the agreement would not constitute a waiver of his or her right to do so at a later time.

On September 16, 2015, the plaintiff filed a motion for contempt alleging that the defendant had failed to satisfy his obligations under the separation agreement.[2] As clarified in her posthearing brief, the plaintiff

claimed, inter alia, unpaid alimony for the period from 2010 up until her remarriage in 2015, reimbursement for her medical insurance premiums, reimbursement for life insurance premiums for a policy she had taken out on the defendant's life from 2010 through 2014, and reimbursement for various activity and education related costs she had incurred for the benefit of the children between 2010 and 2014.

On November 29, 2016, the defendant filed three defenses to the plaintiff's motion for contempt. First, the defendant alleged that the plaintiff was guilty of laches by inexcusably waiting until 2015 to file a motion for contempt for arrearages that had begun to accrue in 2010, thereby prejudicing him. Second, the defendant alleged that the plaintiff was equitably estopped from pursuing her contempt motion because he had relied to his detriment on the plaintiff's forbearance. Finally, the defendant alleged that the plaintiff intentionally had waived her right to enforce the dissolution judgment by failing to do so earlier.

The matter was heard by the court, *Hon. Gerard I. Adelman*, judge trial referee, over the course of four days between February and May, 2017. Also, on April 20, 2017, the defendant filed a motion for contempt alleging that the plaintiff had improperly claimed the younger daughter as a dependent for federal income tax purposes for the years 2009, 2011, and 2013.[3] The defendant also filed a motion for an order requesting, inter alia, that the court give him credit for one half of the cost of the older daughter's 2014 wedding toward any sums found owing to the plaintiff. By consent of the parties, the court heard the defendant's two motions as part of the proceeding on the plaintiff's motion for contempt on May 9, 2017.

On June 27, 2017, the court issued a memorandum of decision responding to all of the parties' pending motions. The court rejected the defendant's defenses and granted the plaintiff's motion for contempt with respect to the defendant's nonpayment of alimony and failure to maintain life insurance. The court denied the remainder of the plaintiff's motion but issued remedial orders requiring the defendant to reimburse the plaintiff for the cost of her medical insurance premiums, certain education related expenses for the younger daughter, and the children's activity related expenses. As to the defendant's motions, the court found the plaintiff in contempt for improperly claiming the dependency exemptions. The court denied his claim for credit for one half of the cost of the older daughter's wedding.

This appeal and cross appeal followed. Additional procedural history will be set forth as necessary.

I

THE DEFENDANT'S APPEAL

A

The defendant first claims that the court abused its discretion in rejecting his defenses without having fully considered the elements of each. Because the court properly determined that the defendant's defenses were barred by the nonwaiver clause of the parties' separation agreement, any inadequacy in the court's consideration of the elements of each defense is inconsequential to our analysis. We therefore reject this claim.

Initially, we set forth the applicable standard of review. Ordinarily, the determination of whether a plaintiff's claim is barred by the doctrines of laches, equitable estoppel, or waiver is a question of fact and, therefore, subject to the clearly erroneous standard of review. See *Kasowitz* v. *Kasowitz*, 140 Conn. App. 507, 513, 59 A.3d 347 (2013); *Culver* v. *Culver*, 127 Conn. App. 236, 244–45, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011); *Ford* v. *Ford*, 72 Conn. App. 137, 141–42, 804 A.2d 215 (2002). In the present case, however, the court relied on the legal effect of the nonwaiver clause of the parties' separation agreement in rejecting the defendant's defenses. The parties do not claim, and we do not find any basis for concluding, that this clause is ambiguous. Consequently, our standard of review is plenary. See *Dow-Westbrook, Inc.* v. *Candlewood Equine Practice, LLC*, 119 Conn. App. 703, 711–12, 989 A.2d 1075 (2010) ("[T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face. . . . [T]he construction and legal effect of the contract [is] a question of law for the court." [Internal quotation marks omitted.]).

Before discussing the legal effect of the nonwaiver clause in the present case, we briefly review the law governing the defenses of laches, equitable estoppel, and waiver. "Laches is an equitable defense that consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." (Internal quotation marks omitted.) *Kasowitz* v. *Kasowitz*, supra, 140 Conn. App. 513. "Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct. . . . [E]stoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Citation omitted; internal quotation marks omitted.) *Culver* v. *Culver*, supra, 127 Conn. App. 244. "Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, but may consist of acts or conduct from which

a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Carpender* v. *Sigel*, 142 Conn. App. 379, 388, 67 A.3d 1011 (2013).

In the present case, not only did the parties' separation agreement expressly foreclose waiver by the mere passage of time, it affirmatively granted to each party the right to enforce the dissolution judgment *at any later time*. Pursuant to paragraph 15.1 of the agreement, "[n]o failure to assert any right, or to enforce any provision of [the] [a]greement shall operate as a waiver of such right or provision, *and either party shall be fully privileged to assert or enforce such right or provision at any later time*." (Emphasis added.) On the basis of the parties' express agreement, the plaintiff was entitled to file her motion for contempt at any time without regard to the issue of delay. Consequently, the defendant's defense of laches necessarily fails.

The defendant's equitable estoppel and waiver defenses similarly must fail. As this court has observed, albeit in the context of commercial agreements, an enforceable nonwaiver clause "bar[s] the application of waiver and estoppel defenses unless a party establishes the existence of unequal bargaining positions or 'sharp dealing.' See *Christensen* v. *Cutaia*, [211 Conn. 613, 619–20, 560 A.2d 456 (1989)]; *S.H.V.C., Inc.* v. *Roy*, [188 Conn. 503, 507, 450 A.2d 351 (1982)]; see also *Webster Bank* v. *Oakley*, 265 Conn. 539, 549–51, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004)." *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 137 Conn. App. 842, 853 n.8, 49 A.3d 1072 (2012). The defendant does not contend that the nonwaiver clause in the present case is unenforceable or that the parties either occupied unequal bargaining positions or engaged in "sharp dealing," and the court made no such findings.[4] Consequently, the defendant's waiver and estoppel defenses are barred.

### B

The defendant next claims that the court improperly took judicial notice of certain facts in ordering him to reimburse the plaintiff for education related expenses incurred for the benefit of the younger daughter.[5] We agree.

We begin by stating our standard of review. "A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . In reviewing a trial court's evidentiary ruling, the question is not whether any one of us, had we been sitting as the trial judge, would have

exercised our discretion differently . . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Citation omitted; footnote omitted; internal quotation marks omitted.) *In re Natalie J.*, 148 Conn. App. 193, 207, 83 A.3d 1278, cert. denied, 311 Conn. 930, 86 A.3d 1056 (2014).

"The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof." (Internal quotation marks omitted.) *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 730 n.24, 652 A.2d 496 (1995). "There are two types of facts considered suitable for the taking of judicial notice: those [that] are common knowledge and those [that] are capable of accurate and ready demonstration. . . . Courts must have some discretion in determining what facts fit into these categories. It may be appropriate to save time by judicially noticing borderline facts, so long as the parties are given an opportunity to be heard." (Citation omitted; internal quotation marks omitted.) *Ferraro* v. *Ferraro*, 168 Conn. App. 723, 732, 147 A.3d 188 (2016); see Conn. Code Evid. § 2-1.[6] "Notice to the parties [however] is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing." (Internal quotation marks omitted.) *Ferraro* v. *Ferraro*, supra, 732; see also Conn. Code Evid. § 2-2 (b).[7]

The following additional procedural history is relevant to our resolution of the defendant's claim. Pursuant to paragraph 3.3 of the separation agreement, the defendant was required to pay for "the post-secondary education in college or for any further learning and training beyond high school for each child, including tuition, room, board, books, fees, clothes and necessary transportation and travel costs." During the proceeding on her motion for contempt, the plaintiff argued that this provision clearly and unambiguously required the defendant to pay, without limitation, for any and all of the children's food and clothing expenses incurred while they were at college or graduate school. The court disagreed and, instead, imported the notion that such expenses, if subject to reimbursement, must have been reasonable when incurred.

As to food expenses, the court first determined that, in light of the fact that the younger daughter had been enrolled in a meal plan offered by her university, the provision was ambiguous as to whether the use of the term "board" encompassed food purchased outside the meal plan. The court concluded that, "construing the

language of the separation agreement in a 'sensible manner' . . . the [defendant] should not be required to reimburse the [plaintiff] for each and every grocery purchase." (Citation omitted.) The court further noted, however, that there may have been instances where, although at university, the younger daughter was not able to utilize her meal plan and therefore required funds with which to purchase food elsewhere, such as while traveling to and from school or when her commitments as part of the university's soccer team prevented her from accessing the campus dining hall. The court found that, "[i]n these situations, it would appear that the [defendant] could reasonably be expected to pay for [her] food pursuant to the terms of the separation agreement."

As to clothing expenses, the court determined that paragraph 3.3 was ambiguous as to whether the "clothes" referenced therein were limited to items normally associated with college living, as opposed to, for example, formal wear to attend family weddings. Construing the relevant contract language in a "fair and reasonable" manner, the court concluded that the defendant's obligation was limited to providing each child "with a reasonable wardrobe for her educational needs."

Having construed paragraph 3.3 as limiting the defendant's obligation to *reasonable* food and clothing costs, the court next sought to determine what such costs would be. The court first noted that the plaintiff had not offered any evidence on this issue; rather, she had only presented invoices for what she had actually spent.[8] The record reflects, as well, that neither party requested that the court take judicial notice of what might be reasonable expenditures for food and clothing for the relevant time periods.[9] Nevertheless, the court decided that, in order "[t]o reach an equitable resolution of the conflict and in light of the lack of evidence as to what reasonable costs might be for food and clothing, the court [would] take judicial notice as to what such costs might be."[10] The court neither gave the parties notice of its intention to take judicial notice nor provided them with an opportunity to be heard on the subject.

Regarding the younger daughter's food expenses while on campus, the court took judicial notice of the cost of a typical meal plan for the 2016–17 academic year at the University of Pennsylvania,[11] which she had attended from 2010 to 2014.[12] As to her food expenses when off campus, such as when traveling to and from school or while engaged in soccer related activities, the court found that "the sum of $75 weekly as a supplement is reasonable . . . ." As to food expenses when she remained on campus between semesters for athletics, the court found that "perhaps another $600" would be reasonable. As for clothing expenses, the court found

that "a clothing allowance of $200 per month [for each child] is . . . more than adequate . . . ." The court did not state the evidentiary basis for these findings. Presumably, the court took judicial notice of these "facts" as matters of common knowledge and, consequently, perceived no need to explicate the basis for its findings. See *Nichols* v. *Nichols*, 126 Conn. 614, 621, 13 A.2d 591 (1940) ("Most matters which the court may notice fall into one of two classes, those which come to the knowledge of men generally in the course of the ordinary experience of life, *and are therefore in the mind of the trier*, or those which are generally accepted by mankind as true and are capable of ready demonstration by a means commonly recognized as authoritative. . . . *As to matters falling within the first class, obviously there is no occasion to introduce evidence.* As to those falling within the second class, it may, in some cases, be the duty of counsel to provide the court with a means of ascertaining them . . . ." [Citation omitted; emphasis added.]).

On the basis of these judicially noticed "facts,"[13] the court calculated the younger daughter's annual food expenses beyond her meal plan to be $3900 and her annual clothing expenses to be $1680.[14] Crediting the defendant for funds he had provided directly to the younger daughter,[15] the court determined the defendant's arrearage for food and clothing expenses from 2010 through 2015 to be $13,915.[16]

The defendant first claims that the court abused its discretion in taking judicial notice of the cost of a meal plan at the University of Pennsylvania. The defendant argues that it was improper for the court to take judicial notice of the dining cost during the 2016–17 academic year because the younger daughter had attended the university between 2010 and 2014, when such costs were lower.[17] The defendant also argues that it was improper for the court to have taken judicial notice of this fact without first affording the parties an opportunity to be heard. This claim requires little discussion.

Even if we assume, arguendo, that it was improper for the court to take judicial notice of the cost of the university's meal plan at a point in time outside of the younger daughter's dates of attendance, the cost found by the court by judicial notice ultimately played no role in its determination of the defendant's food expense arrearage. In calculating the food expenses for which the defendant was responsible, the court expressly indicated that these expenses were for the cost of food *beyond the meal plan*. Although it is unclear why the court deemed it necessary to take judicial notice of the cost of a meal plan, it is clear that any error the court made in taking notice of it could not have prejudiced the defendant. Consequently, we reject this claim.

The defendant also claims that the court abused its discretion in taking judicial notice of the reasonable

cost of clothing.[18] The defendant argues that the court improperly and arbitrarily found, as a matter of judicial notice, that a reasonable monthly clothing allowance for a college student is $200. He also argues that it was improper to notice such a "fact" without affording the parties notice and an opportunity to be heard.[19] We agree with the defendant's arguments in this regard.

That a particular clothing allowance is reasonable is neither "within the knowledge of people generally in the ordinary course of human experience" nor "generally accepted as true and capable of ready and unquestionable demonstration." Conn. Code Evid. § 2-1 (c). Although the approximate price range of various categories of clothing may be common knowledge and the actual price of specific articles of clothing may be readily ascertainable, the reasonableness of an allowance for the periodic purchase of such items cannot be deemed "so well known that evidence to prove [it] is unnecessary . . . ." (Internal quotation marks omitted.) *Daley* v. *J.B. Hunt Transport, Inc.*, 187 Conn. App. 587, 591 n.5,      A.3d      (2019). Whether a given allowance is reasonable depends on a wide range of factors and is thus "subject to reasonable dispute." Conn. Code Evid. § 2-1 (c). For example, a person whose profession demands that she wear formal attire that tends to be more expensive than casual attire may reasonably require a relatively larger clothing allowance, but if she already has a substantial wardrobe of suitable clothing, such a large allowance may be unwarranted. Thus, what constitutes a reasonable clothing allowance is not the proper subject matter of judicial notice, "and certainly not without giving the parties an opportunity to be heard." *Moore* v. *Moore*, 173 Conn. 120, 122–23, 376 A.2d 1085 (1977) ("[w]hether a child's clothing expenses increase 'commensurately' with her age is open to argument" and, consequently, "[t]his 'fact' is one of which judicial notice should not be taken"); *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 442, 671 A.2d 1303 (1996) ("[W]hether a financial institution is comparable to another financial institution and, based on that comparison, whether a substituted interest rate is reasonable is not the proper subject matter of judicial notice. Those facts are in dispute and the burden is placed on the plaintiff to present evidence showing that substituted rate was reasonable."). Accordingly, we conclude that the court abused its discretion by taking judicial notice of an amount it deemed to be a reasonable clothing allowance without giving the parties notice of its intention to do so.[20]

We further conclude that this error necessarily was harmful given the court's reliance on this improperly noticed "fact" in determining the amount of the clothing expense arrearage.

C

The defendant next claims that the court abused its discretion in denying his motion for an order seeking credit for one half of the cost of the older daughter's wedding toward the claimed arrearages. We disagree.

We begin by stating our standard of review. "[O]ur courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." (Internal quotation marks omitted.) *Rostad* v. *Hirsch*, 148 Conn. App. 441, 464, 85 A.3d 1212 (2014), appeals dismissed, 317 Conn. 290, 116 A.3d 307 (2015); accord *Culver* v. *Culver*, supra, 127 Conn. App. 248. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Merk-Gould* v. *Gould*, 184 Conn. App. 512, 516–17, 195 A.3d 458 (2018).

The following additional procedural history is relevant to our resolution of this claim. At trial, the defendant testified that the plaintiff had told him that "she would be responsible for half of the wedding"—whatever the total cost was—and that she had offered to give him credit for this amount toward his obligations under the separation agreement. The plaintiff, however, testified that she never agreed to pay for any portion of the wedding, let alone share the cost of it with the defendant, and that she never agreed, whether in writing or otherwise, to waive any of the terms of the agreement. Moreover, the plaintiff testified that she had explicitly told the defendant that she could not afford to share the cost of the wedding. Specifically, she testified that, after she and the defendant met with the manager of a prospective wedding venue, which was projected to cost approximately \$25,000,[21] she told the defendant that there was "no way [she could] contribute to this." According to the plaintiff, the defendant responded, "I've got this. Don't worry. I just need to know how much."

In his posthearing brief, the defendant argued that the plaintiff had acknowledged responsibility for one half of the wedding expenses and that, had he known that the plaintiff planned to file a motion for contempt after the wedding, "he would have bargained [for] a

reduction in the alimony and child support arrearage in lieu of payment for [the] plaintiff's share of the wedding."[22] On this basis, the defendant claimed a credit for one half of the $60,436 he had purportedly spent on the wedding. In rejecting this claim, the court noted the parties' conflicting testimony and found the plaintiff more credible. Specifically, the court found that, "[g]iven [the plaintiff's] lack of any substantial independent income, it does not seem very plausible that she would have agreed to share the cost of the wedding . . . ."

On appeal, the defendant first claims that the court's finding that the plaintiff lacked "substantial" income is clearly erroneous. We disagree. The plaintiff testified that she had been "struggling with significant debt" around the time of the wedding, having had to resort to credit cards and loans from her parents in order to meet the children's needs after the defendant's support payments became sporadic.[23] The plaintiff further testified that her annual income at the time had been only about $25,000 and that, consequently, she had not been in a position to pay for half of the wedding. Given this testimony and the fact that the cost of the wedding venue alone was anticipated to be $25,000, the court's finding that the plaintiff lacked "substantial" income to share the cost of the wedding is not clearly erroneous.[24]

The defendant also claims that the court abused its discretion "by making the assumption that [the] plaintiff could not credit" him for a share of the wedding costs. The defendant argues that the plaintiff had "intended to induce [him] to believe that she would credit [these costs toward] what he owed her, and [that he had] acted on that belief, to his detriment." We are not persuaded.

Preliminarily, we note the lack of any apparent connection between the defendant's argument and his particular abuse of discretion claim. Even if this connection were readily discernable, however, the claim still fails. Integral to the defendant's argument is his assertion that his "testimony, *which was undisputed by the plaintiff*, clearly articulate[d] that the plaintiff would allow a credit for the wedding expenses . . . ." (Emphasis added.) This assertion is belied by the record. The plaintiff testified that she never agreed to allow the defendant to "do something else in lieu of" making support payments and never agreed to waive *any* of the defendant's obligations under the separation agreement. Consequently, this claim also fails.

D

The defendant next claims that the court abused its discretion in finding him in contempt for failing to maintain a life insurance policy at his own expense. The defendant argues that the court improperly determined that the plaintiff had sustained her burden of proof where the court noted in its memorandum of decision

that the plaintiff's claim was "not entirely clear" and that there remained certain "unanswered questions" regarding the claim. We agree with the defendant.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding.

"The abuse of discretion standard applies to a trial court's decision on a motion for contempt. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . A finding of indirect civil contempt must be supported by clear and convincing evidence. . . .

"[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful. . . . [A] contempt finding is not automatic and depends on the facts and circumstances underlying it. . . . [I]t is well settled that the inability of [a] defendant to obey an order of the court, without fault on his part, is a good defense to the charge of contempt . . . . The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure." (Citations omitted; internal quotation marks omitted.) *Bolat* v. *Bolat*, 182 Conn. App. 468, 479–80, 190 A.3d 96 (2018).

The following additional procedural history is relevant to our resolution of this claim. Paragraph 6.1 of the separation agreement provides in relevant part: "By way of additional support, the [defendant] shall obtain and maintain in full force and effect, at his own expense, life insurance on his life in the amount of [$250,000], with the [plaintiff] as the primary beneficiary. The beneficiaries of this policy shall be designated as follows: $125,000 for the [plaintiff]; and $125,000 to a trust for the children with each child to receive an equal share of the life insurance benefit. Upon the youngest living child of the parties reaching the age of twenty-three . . . or completing a college education . . . whichever

is the first to occur, the [defendant] may change the beneficiary of $125,000 of the total policy value. Upon the [defendant's] alimony obligation terminating, then the [defendant] may change the beneficiary on the remaining $125,000. . . ."

During the hearing on her motion for contempt, the plaintiff testified that the defendant had failed to maintain his own life insurance policy, as required by paragraph 6.1 of the separation agreement, for the years 2010 through 2014. She testified that the defendant had admitted to her that he had not complied with this requirement and that, consequently, she took out her own policy on the defendant's life, with his consent.[25] According to the plaintiff, she paid $165.72 for a partial year of coverage in 2010 and then $662.88 annually for the succeeding four years, and the defendant never reimbursed her for any of it. The plaintiff also testified that she had taken out a loan in order to pay for the policy and that she had paid $375 per year in interest on the loan.

During cross examination, the defendant initially appeared not to dispute that he had failed to maintain his own life insurance policy. When asked whether he had maintained the $250,000 policy specified in the separation agreement, the defendant responded that this had been the plaintiff's responsibility and that he had cooperated with her in obtaining the policy by allowing his blood to be drawn. After later conceding that it had been his responsibility under the agreement to maintain an appropriate policy, the defendant appeared to reverse course and suggest that he had, indeed, purchased such policy. More specifically, when again asked whether he recalled ever having purchased the requisite $250,000 policy, the defendant responded, "[g]reater than that."

In its memorandum of decision, the court found that "the defendant [had] acknowledged that the policy he had at the time of the dissolution of the marriage lapsed in 2010, and that the plaintiff [had] purchased a substitute policy at her expense." The court further found, however, that the plaintiff's claim was "not entirely clear," noting that the defendant had testified that he had "maintained life insurance above the required amount throughout the postjudgment period"[26] but had "offered no specifics [and had admitted that] he allowed the plaintiff to purchase a policy on his life as well." More specifically, the court stated: "It is not entirely clear from the testimony and evidence whether [the plaintiff's] policy supplemented [the defendant's] coverage or was a replacement. If it was a replacement policy, for how long was it necessary if the defendant also had life insurance coverage?" The court then concluded that, "[g]iven some of the unanswered questions on this issue, [the] reduced amount [claimed in the plaintiff's posthearing brief of $2817.24] is a fair claim."[27] Without

any further discussion, the court held that "the plaintiff [had] met her burden of proof for a finding of contempt."

We agree with the defendant that the court improperly concluded that the plaintiff had met her burden of proof. Although the plaintiff's motion for contempt did not specify the manner in which the defendant had allegedly violated paragraph 6.1, it is apparent from her testimony that her theory of the case was that, during the period at issue, the defendant had failed to maintain any life insurance coverage *whatsoever*.[28] Consequently, the plaintiff, as the party seeking a finding of indirect civil contempt, had the burden of establishing by clear and convincing evidence that the defendant had not had his own life insurance policy in effect during the relevant timeframe. See *Brochard* v. *Brochard*, 185 Conn. App. 204, 221, 196 A.3d 1171 (2018). Although the court credited the plaintiff's testimony that she had purchased her own policy on the defendant's life, it was unable to determine whether her policy replaced a policy that the defendant had allowed to lapse—which would be consistent with her testimony that the defendant had not maintained his own policy during the period in question—or merely "supplemented [the defendant's] coverage"—which, contrary to the plaintiff's testimony, would imply that the defendant had indeed maintained his own coverage during the relevant period, although perhaps not in the amount required by the separation agreement. By characterizing this issue as an "unanswered question," the court, in effect, acknowledged that it was not persuaded by the plaintiff's testimony that the defendant had entirely failed to maintain a life insurance policy of any kind. In light of this implicit acknowledgment, the court could not properly have concluded that the plaintiff had sustained her burden of proving by clear and convincing evidence that the defendant had failed to maintain a life insurance policy at his own expense. The court, therefore, abused its discretion in finding the defendant in contempt for noncompliance with paragraph 6.1 of the agreement. Accordingly, the judgment of contempt must be reversed with respect to the issue of life insurance coverage, and the resultant remedial order must be vacated.

E

The defendant next claims that the court abused its discretion by crafting an arrearage payment schedule "without obtaining any evidence of his current or future ability to pay." We decline to review this claim.

The following additional procedural history is relevant to our resolution of the defendant's claim. The court found the defendant in contempt for nonpayment of alimony and failure to maintain life insurance and awarded the plaintiff $80,042 in unpaid alimony and $2817.24 as reimbursement for the expenses she

incurred in maintaining her own insurance policy on the defendant's life. The court denied the remainder of the plaintiff's motion but found that the defendant owed her $2929 as reimbursement for the plaintiff's medical insurance premiums, $13,915 as reimbursement for the younger daughter's food and clothing expenses, and $4676.60 as reimbursement for the children's activity related costs. As to the defendant's motions, the court found the plaintiff in contempt for improperly claiming the dependency exemptions and determined that she owed him $2812.50. Offsetting this amount against the defendant's total obligation, the court calculated the net sum owed to the plaintiff to be $101,567.34 and issued remedial orders setting the rate and terms of repayment. More specifically, the court ordered the defendant to make minimum monthly payments to the plaintiff of $1000 beginning August 1, 2017. The court further ordered that, "[i]f the full amount is not paid in full on or before July 31, 2019, a penalty of 10 percent per annum will accrue on the full amount as of August 1, 2017, regardless of what the actual balance due might be and shall continue to accrue as simple interest until the full amount of the judgment plus any penalty payments are paid in full . . . ." The court made no finding regarding the defendant's financial capacity to comply with its orders.

"As a general rule, the financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 846, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Thus, this court has held it to be an abuse of discretion for a trial court to issue financial orders in a marital dissolution case without considering the parties' financial circumstances where the parties had submitted evidence on the subject; see id. (trial court erred in failing to consider defendant's financial affidavit in ruling on plaintiff's postdissolution motion to terminate, reduce, or modify his alimony obligation to defendant); *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 709, 533 A.2d 1226 (1987) (trial court erred in refusing to consider defendant's updated financial affidavit in issuing orders regarding unallocated alimony and support and division of parties' assets and liabilities); or had been denied the opportunity to do so. See *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 435, 759 A.2d 1050 (2000) (where court had led parties to believe that it would not make any financial orders in ruling on certain postdissolution motions, it was abuse of discretion to issue financial orders without having before it parties' financial affidavits).

In the present case, neither party filed an updated financial affidavit or offered any evidence of his or her financial circumstances at that time.[29] Nor did the parties make any objection at the time of the orders that

the court had not considered their financial conditions. Thus, both parties effectively invited the court to focus solely on the merits of their motions without reference to their current finances. "If counsel has full knowledge of improper conduct (or what he perceives to be improper procedure) he cannot remain silent, hoping for a favorable ruling, and then be heard to complain when the order is unsatisfactory." (Internal quotation marks omitted.) *Bielen* v. *Bielen*, 12 Conn. App. 513, 515, 531 A.2d 941 (1987). Under these circumstances, we decline to review the defendant's claim.[30] See *Tufano* v. *Tufano*, 18 Conn. App. 119, 124–26, 556 A.2d 1036 (1989) (declining to review plaintiff's claim, that trial court erred in imposing contempt sanctions given her lack of financial ability to purge herself by payment, where she offered no evidence regarding her current financial condition and did not object to court proceeding without such evidence); *Bielen* v. *Bielen*, supra, 515 (declining to review defendant's claim that court improperly refused to consider parties' current financial positions in ruling on postdissolution motion for attorney's fees because, although this normally would constitute error, neither party offered evidence thereon or objected to court proceeding without such evidence).

### F

Finally, the defendant claims that the court abused its discretion in declining to award him attorney's fees in relation to his motion for contempt. The defendant's sole argument in support of this claim is that he should be awarded attorney's fees if the plaintiff prevails in her cross appeal on her claim for attorney's fees. Because we decline to review the plaintiff's claim; see part II of this opinion; the defendant's claim necessarily fails.

### II

### THE PLAINTIFF'S CROSS APPEAL

In her cross appeal, the plaintiff claims that the court (1) abused its discretion in declining to award her attorney's fees and costs in relation to her motion for contempt and (2) improperly implied a reasonableness standard into paragraph 3.3 of the parties' separation agreement.[31] We decline to review these claims because they are inadequately briefed.

Regarding attorney's fees, the plaintiff argues that, absent some showing by the defendant that he had been unable to pay the full amount of alimony due, "the plaintiff should have been made whole for having to bring this action to recover alimony . . . ." The plaintiff addresses this claim in less than one page of her appellate brief, provides no citation to authority, and provides no analysis of the claim.

Regarding the interpretation of paragraph 3.3 of the separation agreement, the plaintiff first challenges the court's determination that this provision was ambigu-

ous. Rather than explicate why the court's underlying reasoning was erroneous or engage in any meaningful analysis of the language of paragraph 3.3, the plaintiff simply cites to the text of the provision, acknowledges the correctness of the court's recitation of the boilerplate law of contract interpretation, and asserts in a conclusory fashion that the agreement clearly and unambiguously made the defendant "responsible [for] virtually every expense the children incurred until age [twenty-three]."

The plaintiff also challenges the court's construction of the separation agreement as limiting the defendant's responsibility to *reasonable* food and clothing expenses. The plaintiff argues that, even if the agreement is ambiguous, the court erred in failing to consider evidence that the defendant had paid every bill received from the plaintiff from the date of dissolution until 2010. According to the plaintiff, this evidence demonstrates that the intent and expectation of the parties was that the defendant was required to perform his obligations "without limitation on the reasonableness of expenses . . . ." The plaintiff devotes one paragraph to this argument and cites no legal authority to support it.

In sum, the plaintiff has failed to brief adequately the claims raised in her cross appeal, and, consequently, we deem them abandoned. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016). "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). Accordingly, we affirm the judgment of the trial court with respect to the issues raised by the plaintiff's cross appeal.

The judgment is reversed in part with respect to the arrearage order attributable to clothing expenses and the case is remanded for further proceedings consistent with this opinion; the judgment of contempt is reversed in part as to the defendant's failure to maintain a life

insurance policy, and the resultant remedial order is vacated; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In the statement of issues in his principal appellate brief, the defendant asserts, as two separate claims of error, that the court abused its discretion by (1) taking judicial notice of irrelevant facts and (2) failing to give the parties notice of its intent to take judicial notice. For ease of discussion, we address these claims together.

[2] More specifically, the plaintiff alleged nonpayment of alimony, failure to maintain life insurance, and failure to pay the children's education related costs, in the total amount of $174,110.

[3] The parties' separation agreement provided that, when only one child could be claimed as a dependent, the defendant was entitled to claim the dependency exemption in odd numbered tax years, and the plaintiff was entitled to claim it in even numbered years.

[4] Although the defendant acknowledges in his appellate brief the existence of the nonwaiver clause, he fails to analyze its effect on the viability of his defenses.

[5] The defendant appears to challenge the taking of judicial notice as it pertains to the education related expenses of both children. The court, however, ultimately found that the defendant's transfer of funds to the older daughter "more than covered" her expenses during the relevant time period. The court therefore denied the plaintiff's request for reimbursement of the older daughter's education related expenses. Because the court resolved this matter in the defendant's favor, he cannot claim to be aggrieved by any errors the court may have made in calculating the older daughter's expenses. See *In re Allison G.*, 276 Conn. 146, 158, 883 A.2d 1226 (2005) ("As a general rule, a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision." [Internal quotation marks omitted.]). Consequently, to the extent the defendant's claim on appeal implicates issues relating to the older daughter in particular, he lacks standing to challenge, and we lack subject matter jurisdiction to review, that portion of the claim. See id. Accordingly, we limit our review to the court's taking of judicial notice as it relates to the younger daughter.

[6] Section 2-1 of the Connecticut Code of Evidence provides in relevant part: "A court may, but is not required to, take judicial notice of matters of fact . . . . A judicially noticed fact must be one not subject to reasonable dispute in that it is either . . . within the knowledge of people generally in the ordinary course of human experience, or . . . generally accepted as true and capable of ready and unquestionable demonstration. . . ."

[7] Section 2-2 (b) of the Connecticut Code of Evidence provides: "The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned."

[8] The plaintiff presented several hundred sales receipts evidencing her actual food and clothing related expenditures, the majority of which were admitted as full exhibits.

[9] At the hearing on April 12, 2017, the court indicated that it was considering applying a "reasonableness test" to the plaintiff's claim for reimbursement of clothing expenses. In an interlocutory order issued later that day, the court requested that the parties offer evidence "as to what each party might consider a reasonable sum to be spent on clothing on a monthly or annual basis." Neither party offered any such evidence, although the defendant, in his posthearing brief, did refer the court to the Internal Revenue Service's 2012 national standards for food, clothing and other items, which, according to the defendant, lists the clothing expense for a family of three as $193 per month.

[10] In support of its decision to decide this issue despite the plaintiff's failure to present evidence regarding reasonableness, the trial court cited this court's statement in *Commissioner of Transportation* v. *Larobina*, 92 Conn. App. 15, 32, 882 A.2d 1265, cert. denied, 276 Conn. 931, 889 A.2d 816 (2005), that, "[w]hen faced with the constraints of incomplete information, a court cannot be faulted for fashioning an award as equitably as possible under the circumstances." We note that, unlike in *Larobina*, the trial court in the present case was presented with a surfeit of evidence regarding the plaintiff's actual food and clothing related expenditures; see footnote 8 of

this opinion; but determined that many of these expenditures were unreasonable.

[11] Specifically, the court noted that a search of the university's website had disclosed a dining cost of $5086 for the 2016–17 academic year.

[12] The defendant asserts in his appellate brief that the court also took judicial notice of educational expenses at the University of Connecticut and argues that this was improper because neither child attended that university. The defendant misconstrues the court's memorandum of decision. In its decision, the court stated that it could take judicial notice of the cost of a typical college meal plan. In support of this proposition, the court quoted parenthetically from the decision in *Morris* v. *Morris*, Superior Court, judicial district of Fairfield, Docket No. FA-01-0384330-S (May 30, 2006), in which the court stated that it had taken "judicial notice of the published annual rates for undergraduate tuition, fees, room and board for a full-time, in-state student at the University of Connecticut as published on the official [university] website . . . ." It is clear in this context that the court in the present case was relying on *Morris* for a general principle of law—not for any specific, judicially noticed facts. Indeed, the court went on to note that the younger daughter had attended the University of Pennsylvania and proceeded to enumerate the various fees and expenses published on that university's website. Thus, the defendant's argument that the court improperly took judicial notice of the University of Connecticut's fees lacks a factual foundation, and we therefore reject it.

[13] The court also took judicial notice of the length of each semester at the University of Pennsylvania for the 2017–18 academic year, finding it to be "approximately eighteen weeks, including fall and spring break periods."

[14] Specifically, the court determined that the younger daughter's "food allowance above and beyond the meal plan provided would be approximately $1350 a semester, considering the $75 weekly allowance for the eighteen week semester schedule, plus perhaps another $600 to cover food between semesters when school was not in session and when the daughter remained at college for athletic reasons. That would total approximately $2790 a semester for food and clothing, or $5580 each year." The court did not indicate why it had limited its determination of her food allowance to the cost beyond her meal plan, but the plaintiff does not claim in her cross appeal that this finding was in error.

[15] Specifically, the court found that the defendant had provided her $14,755 in 2010; $100 in 2011; $2920 in 2012; $3645 in 2013; $2220 in 2014; and $5100 in 2015.

[16] Specifically, the court determined that, "[f]or calendar year 2010, the defendant would have overpaid and owes nothing, but for 2011, he would owe $5480; for 2012, $2660; for 2013, $1935; for 2014, $3360; and for 2015, $480." (Footnote omitted.)

[17] The defendant asserts in his appellate brief that the trial court took judicial notice of educational expenses for the University of Pennsylvania for the calendar year 2011. The defendant is again mistaken. Nowhere in the court's memorandum of decision does the court mention educational expenses at the university in 2011. The court explicitly stated that it was taking judicial notice of "[t]he costs of attending the University of Pennsylvania for the 2016–2017 academic year . . . ." Thus, the defendant's argument that the court improperly took judicial notice of the university's 2011 dining cost lacks an evidentiary foundation.

[18] The defendant also appears to argue that the court abused its discretion in failing to take judicial notice of the Internal Revenue Service's 2012 national standards for clothing, to which the defendant had referred the court in his posthearing brief. See footnote 9 of this opinion. We disagree. The record reveals that at no time during the hearing did either party ask the court to take judicial notice of any facts. Section 2-1 (b) of the Connecticut Code of Evidence expressly provides that "[a] court may, *but is not required to*, take notice of matters of fact, in accordance with subsection (c) [of § 2-1]." (Emphasis added.); see also *De Luca* v. *Park Commissioners*, 94 Conn. 7, 10, 107 A. 611 (1919) ("The doctrine of judicial notice is not a hard and fast one. It is modified by judicial discretion. . . . Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case." [Internal quotation marks omitted.]). Consequently, even if we assume, arguendo, that the defendant's reference to the national standards in his posthearing brief could be construed as a request for the court to take judicial notice of such standards, the court was under no obligation to do so. Accordingly, we reject the defendant's argument.

[19] Additionally, the defendant argues that the court abused its discretion by making unfounded assumptions regarding when the younger daughter was at school versus at home, as well as when and how often she was unable to utilize her meal plan. Although the defendant frames this issue as one of abuse of judicial discretion in taking judicial notice, in substance, he appears to assert a claim of evidentiary insufficiency, arguing that the plaintiff "failed to present any evidence as to dates or times when the children were home, traveling or at athletic events, except as general testimony as to school years." Contrary to the defendant's assertion, there was evidence presented during the proceeding beyond "general testimony as to school years." The plaintiff testified that, although the younger daughter normally came home for Christmas, "[s]ometimes she was on tournaments." The plaintiff also testified that, although the academic year at the University of Pennsylvania ends in May or June, she "stayed on campus, because she was an athlete" and participated in "soccer camps and whatnot." The plaintiff further testified that the younger daughter's schedule as a collegiate soccer player—which required her to train and practice daily, play in games, and travel—sometimes interfered with her ability to utilize her meal plan. More specifically, she testified that the younger daughter trained and studied until late hours, "and so, a lot of times the cafeteria wasn't available to her, and she wasn't able to get there on time and balance the schedule that she had, so I supplemented her food." According to the plaintiff, the younger daughter was involved in soccer throughout her time at the University of Pennsylvania. The defendant's analysis of this issue is devoid of any discussion of this or any other evidence and fails to include the applicable standard of review or citations to any legal authority. We therefore conclude that this issue is inadequately briefed, and, accordingly, we decline to review it. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[20] Although it would appear to be similarly improper for the court to take judicial notice of what it deemed to be a reasonable allowance for food beyond the younger daughter's meal plan, the defendant did not challenge this aspect of the court's decision in his principal appellate brief. On the issue of the food expense arrearage, the defendant initially raised only two claims. First, the defendant claimed, in part 2 (a) of his brief, that the court improperly "use[d] information from a school not attended . . . [for] years of attendance which are not the years of school attendance by the minor children." Second, he claimed that the "parties . . . were not notified by the trial court that it intended to use the resources it chose to take judicial notice of, *as set forth in* [*part*] *2, above,* and, therefore, were not given an opportunity to refute the information cited." (Emphasis added.) In his reply brief, the defendant claims for the first time that it was improper for the court to take judicial notice of what it deemed to be a reasonable food allowance for the younger daughter while at university between semesters. "[I]t is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument." (Internal quotation marks omitted.) *Medeiros* v. *Medeiros*, 175 Conn. App. 174, 190 n.12, 167 A.3d 967 (2017). Accordingly, we decline to review this claim.

[21] The plaintiff testified that the family of the older daughter's fiancé had been willing to pay for half of the cost of the wedding venue. The defendant testified, however, that he had paid the entire cost of the venue, which was in fact $29,260.

[22] We note the apparent inconsistency between this argument and the defendant's testimony that the plaintiff had, in fact, agreed to give him credit for the wedding costs.

[23] The plaintiff testified that she had borrowed a total of $65,000 from her parents between 2010 and 2015.

[24] The defendant also appears to argue that this finding does not reasonably support the court's conclusion—that it was unlikely the plaintiff would have agreed to share the cost of the wedding—because her lack of a substantial income does not necessarily mean that she was "not able to contribute *anything* to the cost of the wedding." (Emphasis in original.) Although there may be some logic to this argument, the defendant's position in the trial court was not that the plaintiff had agreed to contribute to the wedding expenses *to the extent she was financially able*; his position was that she had agreed to be responsible for *one half* of *whatever* he spent on the wedding. Given that the plaintiff's annual income at the time was only $25,000, and that the cost of the wedding venue alone was anticipated to

be $25,000, it was reasonable for the court to deem it unlikely that she would have agreed to split the cost of the wedding. Moreover, "[t]he trial judge, as the finder of fact in this case, was the sole arbiter of credibility. [I]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Internal quotation marks omitted.) *Levinson* v. *Lawrence*, 162 Conn. App. 548, 561–62, 133 A.3d 468 (2016).

[25] More specifically, the plaintiff testified that she had told the defendant that he was supposed to be paying for a life insurance policy but that she would pay for it if he would cooperate with her in obtaining the policy.

[26] We note that there is no evidence in the record indicating *when* the defendant supposedly purchased this policy. The only reasonable interpretation of the defendant's testimony is that he claimed that he had, *at some point*, purchased a policy in excess of the $250,000 required by the separation agreement.

[27] As the court noted, during the proceeding, the plaintiff appeared to be seeking reimbursement for both the policy premiums and loan interest, which the court calculated as amounting to $5817.24. It is unclear how the court arrived at this figure. Even assuming that the plaintiff had incurred the full $375 of interest for the partial year of coverage in 2010, the most she could claim would be $4692.24. Ultimately, however, the plaintiff did not pursue the claim for interest. In her posthearing brief, she requested reimbursement for the policy premiums only, which amounted to $2817.24.

[28] When explicitly asked whether the defendant had kept a life insurance policy in force during the period at issue, the plaintiff responded, "[n]o, he did not." Nothing in her testimony suggested that the defendant had violated paragraph 6.1 of the separation agreement by maintaining an *inadequate* policy.

[29] The only financial affidavits in the record are those filed by the parties at the time of the dissolution of their marriage in 2008.

[30] The defendant also appears to take issue with the particular terms of the remedial order. To the extent he intended to raise this as a separate claim, we deem it abandoned. The defendant's discussion of the issue lacks any citation to relevant authority and is limited to a single sentence: "There is no justification for this lump sum award and the penalty." We therefore conclude that this claim is inadequately briefed and, accordingly, decline to review it. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[31] In her appellate brief, the plaintiff appears to claim that the court also improperly implied a reasonableness standard into paragraph 3.2 of the separation agreement, which provides in relevant part: "By way of additional child support, the [defendant] shall be responsible for all activity costs for both of the parties' children . . . until each child reaches the age of twenty-three . . . . Said activity costs shall include but not be limited to all soccer and other athletic expenses, transportation and travel costs, including the purchase of a safe and reliable automobile for each child, all costs of attending a private preparatory school and all other costs for the girls' activities." The plaintiff appears to argue that the court improperly determined this provision to be ambiguous and, therefore, erred in implying a reasonableness standard into it. The plaintiff misconstrues the court's memorandum of decision. In its decision, the court explicitly determined that paragraph 3.2 was unambiguous and required the defendant to reimburse the plaintiff for "*all* activity related expenses" that she had incurred. (Emphasis added.) The court made no mention of any implicit reasonableness requirement. Thus, the plaintiff's claim has no basis in the record, and, accordingly, we reject it.