SHERRY KASOWITZ *v.* LEWIS KASOWITZ
(AC 34179)

DiPentima, C. J., and Sheldon and Bishop, Js.

Argued December 6, 2012—officially released January 29, 2013

*Joseph S. Hubicki*, for the appellant (defendant).

*Noah Eisenhandler*, with whom, on the brief, was *Lori Welch-Rubin*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Lewis Kasowitz, appeals from the judgment of the trial court granting the postdissolution motion of the plaintiff, Sherry Kasowitz, to find him in contempt. On appeal, he argues that the court improperly (1) found that he wilfully or deliberately disobeyed the court's financial orders and (2) rejected his defense of laches. We are not persuaded by either claim and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of this appeal. The marriage of the parties was dissolved on January 26, 1999. The court awarded legal and physical custody of the parties' six children to the plaintiff. The court ordered the defendant to pay $225 per week in child support, $150 per

week in alimony, an additional $250 per week in unallocated support and $45 per week to eliminate an arrearage. Further, each party was ordered to pay one half of the children's uncovered or unreimbursed dental expenses.

On October 17, 2011, the plaintiff filed a motion for contempt, alleging that the defendant had failed to comply with the judgment of the court. Specifically, she claimed that he had failed to make the required alimony, child support, additional support and dental expense payments. On December 6, 2011, the defendant filed an objection, arguing that the plaintiff's motion was barred by the equitable doctrine of laches.

The court held a hearing on December 14, 2011. At the outset, the parties' attorneys agreed that the child support order had terminated in June, 2007,[1] and that the alimony award had expired in January, 2009. The plaintiff testified that she and the children had had virtually no contact with the defendant following the divorce. She further stated that the defendant's child support and alimony obligations were paid by his former employer, TR Paul, Inc. (TR Paul),[2] to her attorney, who then forwarded the payment to her. The plaintiff last received a payment from the defendant, via the arrangement with TR Paul, in 2007. After that, the plaintiff testified that she collected all of the payments received and calculated the following arrearages: $9752 for 2001, $16,039.60 for 2002, $14,556.29 for 2003, $14,502.23 for 2004, $14,369.71 for 2005, $12,955.65 for 2006, $10,640.04 for 2007 and $7800 for 2008, for a total of $100,625.52. The plaintiff also calculated the arrearage from the defendant's failure to pay one half of unreimbursed dental expenses as $6814. The plaintiff

[1] The parties' youngest child turned eighteen in June, 2007.

[2] The defendant explained that he was entitled to a commission from "a continuing stream of revenue" following his departure from TR Paul. These commissions ended in December, 2007.

further testified that all six of the children had attended college and some had continued on to graduate school.

The defendant testified that he had been unaware of the arrearage accumulating over the years. He acknowledged, however, receiving monthly statements from TR Paul that showed the payments that had been sent to the plaintiff and the payments that had been sent to him. The defendant did not verify that the payments from TR Paul satisfied his financial obligation to the plaintiff as ordered by the court. He also indicated that he had not been notified about the dental expenses of the children.

At the conclusion of the hearing, the court issued an oral decision.[3] The court found the defendant in contempt. It further found that it was not credible that the defendant "was unaware of the shortfall in the support payments when he was receiving statements every month from TR Paul as to what his—what he was receiving from them and also showing what was going to [the plaintiff] pursuant to that agreement . . . . It had to be clear to him that she wasn't being paid the full amount of what was being owed to her pursuant to that agreement which was an order of the court." The court also rejected the defendant's defense of laches, finding both that the plaintiff's delay was reasonable and that the defendant was not prejudiced as a result of the delay. As to the former, the court stated: "Her delay I believe is excusable and I find it's excusable given everything that was going on in her life at the time; taking care of six kids, putting them through high school, getting them to college, getting them through college with little help or contact from [the defendant]." In finding no prejudice, the court noted that the defendant was not harmed by the delay as to a debt he owed to the Internal Revenue

---

[3] The court subsequently signed a transcript of its decision. See Practice Book § 64-1 (a).

Service.[4] The court concluded that the defendant failed to meet his burden of proof as to this element of the defense of laches.

The court found the total arrearage to be $100,625.52, which did not include any award for the plaintiff's claim regarding unreimbursed dental expenses. It ordered a lump sum payment of $15,000, payable within fifteen days, followed by weekly payments of $300. This appeal followed.

On appeal, the defendant first claims that the court improperly found him in contempt. Specifically, he argues that there was nothing in the record to support a finding that he wilfully refused to comply with his support obligations as ordered by the court. He further contends that neither his former employer nor the plaintiff informed him of the shortfall. We are not persuaded that the court's finding of contempt was improper.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . A court may only find a party in contempt when that party has wilfully failed to comply with a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support

---

[4] The defendant claimed that he was prejudiced because he used funds to repay other financial obligations, including a large debt owed to the Internal Revenue Service. He testified that if he had been made aware of the arrearage, he would have paid the plaintiff and reached a different arrangement with the Internal Revenue Service.

a judgment of contempt. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Gray* v. *Gray*, 131 Conn. App. 404, 408–409, 27 A.3d 1102 (2011); see also *Montagnese* v. *Spicer*, 130 Conn. App. 301, 304–305, 22 A.3d 702 (2011).

Responsibility for compliance with the support order fell solely on the defendant's shoulders. Neither his former employer nor the plaintiff shared that responsibility. See generally *Giordano* v. *Giordano*, 127 Conn. App. 498, 505–506, 14 A.3d 1058 (2011). In his testimony, the defendant conceded that he had received monthly statements from TR Paul showing the moneys paid to the plaintiff but he had "never thought about" whether his obligations to her had been met. He also acknowledged that he presently was employed as a stockbroker and was responsible for handling other people's money. Given these facts, we conclude that the court's finding of contempt was not clearly erroneous. The court was free to find that "[i]t had to be clear to [the defendant] that [the plaintiff] wasn't being paid the full amount" and therefore that he was in wilful violation of the court's order. "It is . . . undisputed that, if a finding of wilful misconduct is based on a court's determination of the credibility of relevant testimony at trial, we will overturn it only if the record demonstrates a manifest abuse of discretion. [T]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *LaBossiere* v. *Jones*, 117 Conn. App. 211, 224, 979 A.2d 522 (2009). The defendant's challenge to the court's finding of contempt, therefore, must fail.

The defendant next claims that the court improperly rejected his defense of laches. Specifically, he argues

that the plaintiff's delay in filing the contempt motion was inexcusable and that he was prejudiced as a result. We disagree.

"Laches is an equitable defense that consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question. . . . Thus, prejudicial delay is the principal element in establishing the defense of laches. . . . The standard of review that governs appellate claims with respect to the law of laches is well established. A conclusion that a plaintiff has been guilty of laches is one of fact . . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 334–35, 983 A.2d 293 (2009); see also *Jarvis* v. *Lieder*, 117 Conn. App. 129, 149, 978 A.2d 106 (2009); *Sablosky* v. *Sablosky*, 72 Conn. App. 408, 413, 805 A.2d 745 (2002).

The court made a finding that the plaintiff's delay was excusable. "I find it's excusable given everything that was going on in her life at the time; taking care of six kids, putting them though high school, getting them to college, getting them through college with little help or contact from [the defendant]." This finding is supported by the plaintiff's testimony that she was "totally busy" raising and supporting the children, and, as a result, lacked the time to review the financial documents. She further testified that she had "kept track of the money as far as I got the check, I filed it and that's what I have . . . . I always filed the year together. I had a running record, a sloppy running record. After 2007, I had the opportunity to sit down, put it all together." Last, she stated that once she learned that

she could go to court without an attorney, she filed the motion for contempt. On the basis of this record, the court's finding that the plaintiff's delay was excusable was not clearly erroneous. Therefore, the court properly rejected the defendant's claim of laches.[5]

The judgment is affirmed.

---

[5] We note that the court also found that the defendant was not prejudiced by the plaintiff's delay. The defendant had argued that if he had known of his arrearage to the plaintiff, he would have arranged a less burdensome payment plan for his significant debt to the Internal Revenue Service. In rejecting this argument, the court stated: "I don't find it credible that this delay harmed in his obligation to the [Internal Revenue Service]. I don't think he's met his burden of proof on that issue." We further conclude that this finding was not clearly erroneous, and therefore the defendant failed to satisfy both elements of the defense of laches.