******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# DAVID L. TRENT *v.* KATIA R. TRENT
## (AC 46247)

Bright, C. J., and Clark and Seeley, Js.

### *Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the trial court's judgments granting the defendant's motion for contempt, which alleged that the plaintiff had failed to pay his share of child care expenses, denying the plaintiff's motion for contempt, which alleged that the defendant had failed to comply with a discovery order, and denying the plaintiff's motion to modify alimony and child support. *Held*:

1. The trial court abused its discretion when it granted the defendant's motion for contempt: the defendant failed to establish by clear and convincing evidence that the plaintiff had violated the court order that required him to pay 76 percent of qualifying child care expenses and that any such violation was wilful because she failed to satisfy her burden of proving that the child care costs for which she sought reimbursement were qualifying costs that were necessary to allow her to maintain her employment; moreover, because the defendant failed to comply with the plaintiff's requests for documentation verifying that the child care expenses for which she sought reimbursement were necessary to maintain her employment, the record, at best, demonstrated that the plaintiff ceased reimbursing the defendant for such expenses due to a good faith dispute over whether those costs were eligible for reimbursement under the applicable child support regulation (§ 46b-215a-2c (g) (2)).

2. The trial court did not err in denying the plaintiff's motion for contempt; the evidence in the record that the defendant did not have knowledge of the trial court's discovery order because she did not receive correspondence from her attorney was sufficient to support the court's finding that the plaintiff had failed to prove by clear and convincing evidence that the defendant's noncompliance with that order was wilful.

3. The trial court abused its discretion in denying the plaintiff's motion to modify alimony and child support: the trial court's finding that there was not a substantial change in circumstances with respect to the plaintiff's request to modify alimony was based solely on its clearly erroneous finding regarding the defendant's 2022 earnings, as the plaintiff had introduced undisputed documentary evidence subpoenaed from the defendant's employer that refuted the defendant's financial affidavit; moreover, there was no authority for the trial court's conclusion that the plaintiff's request to modify child support was improper because he sought only to reduce his contributions to child care expenses and

health care expenses rather than to amend the child support award in its entirety.

Argued March 4—officially released July 23, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Grossman, J.*, rendered judgment dissolving the parties' marriage and granting certain other relief in accordance with, inter alia, an arbitration award; thereafter, the court, *Moses, J.*, granted the defendant's motion for contempt and denied the plaintiff's motions for contempt and to modify alimony, child support and visitation, from which the plaintiff appealed to this court. *Reversed in part; judgment directed in part; further proceedings.*

*Richard W. Callahan*, for the appellant (plaintiff).

*Opinion*

CLARK, J. In this postdissolution matter, the plaintiff, David L. Trent, appeals from certain judgments of the trial court stemming from two postdissolution motions filed by him and one postdissolution motion filed by the defendant, Katia R. Trent.[1] On appeal, the plaintiff claims that the court improperly (1) granted the defendant's motion for contempt, which alleged that the plaintiff failed to pay his share of child care expenses, (2) denied his motion for contempt, which claimed that the defendant failed to comply with a discovery order, and (3) denied his motion to modify alimony and child support. We agree with the plaintiff on his first and third claims but disagree with him on his second claim. Accordingly, we reverse the court's judgment of contempt and the judgment denying the plaintiff's motion

---

[1] The defendant did not participate in this appeal. Counsel for the defendant filed correspondence with the court on January 5, 2024, indicating that the defendant "takes no position in this appellate matter and will not be filing a brief."

for modification as to alimony and child support. We affirm the judgment denying the defendant's motion for contempt.

The following undisputed facts and procedural history are relevant to the plaintiff's claims. The parties were married on July 31, 2004. They have twin children who were born in October, 2013. On March 24, 2017, the plaintiff commenced a dissolution action, alleging that the marriage had broken down irretrievably.

On May 4, 2018, the parties filed an agreement with the court indicating their desire to settle the matter through binding arbitration. Specifically, they agreed to have an arbitrator "decide any and all financial matters submitted to the arbitrator by either party." The same day, the court, *Wenzel, J.*, approved the parties' stipulation, indicating that "[t]he only matter reserved is that of child support" and that "[t]he pendente lite orders of the court will remain in effect until the parties return after arbitration."

On June 19, 2018, the arbitrator issued her decision requiring the plaintiff to pay the defendant $800 per week in periodic alimony "for a period of eight years, to sooner terminate on the death of either party or the defendant's remarriage." Upon the request of the parties to provide a recommendation as to child support, the arbitrator found "the presumptive child support under the [child support] guidelines to be paid by the plaintiff to the defendant to be $545 per week based on [the plaintiff's] base salary." Furthermore, the arbitrator stated: "The plaintiff should pay the defendant 77 percent of all health expenditures not paid by insurance and day care necessary for the defendant's work."[2] On

---

[2] At the time of the parties' dissolution, Connecticut law did not allow for child support, visitation, or custody to be decided through arbitration. See, e.g., General Statutes (Rev. to 2017) § 52-408 ("[a]n agreement in any written contract . . . or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, *except issues related to child support,*

June 22, 2018, the defendant filed a motion to confirm the arbitration award, requesting the court to "enter a dissolution of marriage in accordance with the arbitration decision."

On July 5, 2018, the defendant filed with the court a child support guidelines worksheet. The worksheet provided, inter alia, for a presumptive child support order of $545 per week to be paid by the plaintiff to the defendant. It further provided that the plaintiff would be responsible for 76 percent of the children's unreimbursed medical expenses and child care expenses, and the defendant would be responsible for 24 percent of those expenses. The plaintiff did not object to the calculations in the worksheet. On the same date, the parties filed with the court an agreement, which provided in part: "The parties agree [that] in addition to the weekly child support of $545 per week per the child support guidelines, the plaintiff shall [pay] 22.66 percent of the net [of] all bonuses received." The same day, the court, *Grossman, J.*, rendered judgment dissolving the parties' marriage, incorporating into its judgment of dissolution the arbitration award, the parties' July 5, 2018 agreement, and the parties' parenting plan.[3] Although neither

visitation and custody, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally" (emphasis added)). The arbitrator, therefore, could only make a recommendation as to child support, which was, of course, subject to the court ultimately deciding the issue.

General Statutes § 52-408, however, no longer excludes issues related to child support, visitation, and custody from being arbitrated, subject to certain requirements. See General Statutes § 52-408 ("[a]n agreement in any written contract . . . or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally, subject to the requirements of subsection (e) of section 46b-66 in the case of an award with respect to a dissolution of marriage").

[3] The parties filed a "final parenting plan" with the court on May 4, 2018.

the judgment nor the parties' July 5, 2018 agreement expressly required the plaintiff to contribute to qualifying child care expenses, the parties agree that the judgment incorporated the arbitrator's recommendation with respect to qualifying child care expenses but modified the plaintiff's obligation from 77 percent to 76 percent of such expenses in accordance with the defendant's child support worksheet.

On March 15, 2021, the plaintiff filed a postjudgment motion to modify alimony, child support, and parenting time. As to the modification of child support and alimony, the plaintiff alleged that there had been a substantial change in circumstances, namely, that the defendant had obtained employment since the date of the dissolution judgment.[4] The defendant filed an objection to the plaintiff's motion.

On September 16, 2022, the defendant filed a motion for contempt, alleging that the plaintiff was wilfully violating the court's order requiring him to pay 76 percent of qualifying child care costs. On December 6, 2022, the plaintiff filed a motion for contempt on the ground that the defendant had failed to comply with the trial court's November 8, 2022 order to respond to all outstanding discovery requests on or before November 22, 2022.

On January 19, 2023, the trial court, *Moses*, *J.*, issued its order on the plaintiff's March 15, 2021 postjudgment motion to modify alimony, child support and visitation. The court denied the plaintiff's request to modify child support, stating: "[T]his court denies the plaintiff's request to modify only the child support order to reduce his contributions to child care expenses and health

---

[4] In his March 15, 2021 motion to modify, the plaintiff also requested a modification of his visitation schedule because it was likely that his employer would require him to relocate to Florida in order to maintain his employment. The court's order as to visitation is not at issue in this appeal.

care expenses, as it is improper given the fact that the plaintiff is not seeking to amend the child support award in its entirety." Further, the court denied the plaintiff's request to modify alimony, ruling that it "does not find a substantial change in circumstances given the fact that the defendant is earning well under $30,000 a year."

In separate orders also issued on January 19, 2023, the court granted the defendant's September 16, 2022 motion for contempt and denied the plaintiff's December 6, 2022 motion for contempt. As to the defendant's motion for contempt, the court found that the plaintiff wilfully failed to comply with the court's order requiring him to pay 76 percent of the child care expenses. The court ordered the plaintiff to "reimburse the defendant for 76 percent [of] all child care expenses incurred during the time of his noncompliance." The court also awarded the defendant attorney's fees. As to the plaintiff's motion for contempt, the court denied the motion, concluding that the defendant's noncompliance with the court's order to respond to the plaintiff's discovery requests was not wilful. This appeal followed.

I

The plaintiff's first and second claims of error concern the court's rulings on two motions for contempt, one filed by him and one filed by the defendant. First, the plaintiff claims that the court erred in granting the defendant's September 16, 2022 motion for contempt because the defendant failed to establish by clear and convincing evidence that he wilfully violated the court order that required him to pay 76 percent of qualifying child care expenses. Second, he claims that the court erred in denying his December 5, 2022 motion for contempt because, among other things, he established by clear and convincing evidence that the defendant's failure to comply with the discovery order was wilful. We address each claim in turn.

We begin with the relevant legal principles and our standard of review. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 222 Conn. App. 855, 866, 307 A.3d 923 (2023).

"To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review." (Internal quotation marks omitted.) *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 68–69, 290 A.3d 825 (2023). "[I]f we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest

abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 59, 925 A.2d 334 (2007).

A

The plaintiff claims that the court erred when it granted the defendant's motion for contempt because the defendant failed to establish by clear and convincing evidence that the plaintiff wilfully violated the court order that required him to pay 76 percent of qualifying child care expenses. Specifically, he claims that the defendant failed to prove that the child care expenses at issue were eligible for reimbursement as "qualifying costs," as defined in § 46b-215a-2c (g) of the Regulations of Connecticut State Agencies, because the defendant failed to prove that the child care was "necessary" for her to maintain her employment. He therefore contends that the defendant failed to prove any violation of the court's order. In addition, the plaintiff claims that, even if he did violate the order, the defendant failed to prove that any violation was wilful because he reasonably requested, but the defendant refused to provide, documentation of her work hours so that he could confirm that the child care reimbursements that she requested from him were in fact qualifying costs. For the reasons that follow, we agree with the plaintiff.

The following additional facts and procedural history are relevant to the plaintiff's claim. In addition to filing the arbitration decision with the court, the defendant also filed a child support guidelines worksheet with the court reflecting, among other things, that the plaintiff would be responsible for 76 percent of the children's unreimbursed medical expenses and child care expenses and that the defendant would be responsible

for 24 percent of those expenses. See footnote 2 of this opinion. The plaintiff did not file an objection to the calculations in the worksheet.

On September 16, 2022, the defendant filed a motion for contempt, claiming that "[t]he plaintiff was ordered to pay 76 percent of child care for the minor children, which he has wilfully failed to pay." The child care expenses at issue represented the cost of an extended day program at the children's school. At the hearing on the motion for contempt on January 17, 2023, the plaintiff's counsel argued, inter alia, that the defendant failed, upon request, to provide him with documentation to verify that the extended day program was necessary for her to maintain her employment and that the plaintiff did not have an obligation to reimburse the defendant for child care that is not necessary to allow her to maintain employment.

The testimony of the parties revealed that the children's normal school day starts at 8:30 a.m. and ends at 3:20 p.m. The defendant testified that, if the children were to take the school bus to and from school, the school bus would pick them up from home at approximately 8:10 a.m. and drop them back off at approximately 3:30 p.m. The defendant testified, however, that the children no longer take the bus to school because she enrolled them in an extended day program that provides before and after-school care. She explained that she typically drops the children off to the program at approximately 7:30 a.m. or 7:40 a.m. and that she picks them up from the after-school program at approximately 4:45 p.m. She testified that the program in which she has the children enrolled requires her to elect at the beginning of school year whether they will enroll in the program. She testified that families can choose before or after-school care, or both, but the election must be made in the beginning of the school year. It cannot be switched daily or weekly.

The plaintiff testified that, until approximately August, 2022, he was current in reimbursing the defendant for his portion of child care expenses. He testified, however, that, in or about September, 2022, he stopped reimbursing the defendant for the child care costs that she requested from him because, from what he could tell from documents obtained through discovery, the extended day program was not necessary for the defendant's employment because she was not working during the time the children were in the program.

Specifically, the plaintiff testified that, prior to the time he stopped reimbursing the defendant for child care expenses, he had made numerous requests to the defendant to produce documents verifying her work hours. He testified that she failed to comply with those requests.[5] Indeed, when the defendant was asked by the plaintiff's counsel at the hearing whether she provided the plaintiff with her time card reports when he asked for information regarding her work hours in order to resolve their disagreement about her requests for reimbursement of child care expenses, she responded, "I guess not."

After he stopped reimbursing the defendant for child care expenses due to her failure to provide him with documentation verifying her work hours, the plaintiff subpoenaed the defendant's employer for her employment records. Through the subpoena, the plaintiff obtained the defendant's time cards and pay stubs.[6]

---

[5] The record shows that, on August 11, 2021, the plaintiff filed a motion to compel with the court seeking the defendant's compliance with his request for disclosure and production postjudgment. It does not appear that the August 11, 2021 motion was ever acted upon by the court.

[6] As we discuss in greater detail in part I B of this opinion, the plaintiff also filed a motion for order of compliance with the court on November 4, 2022, requesting that the court order the defendant to comply with the plaintiff's request for disclosure and production. On November 8, 2022, the court, *Truglia, J.*, granted the motion, ordering the defendant to comply with "all outstanding discovery requests on or before November 22, 2022." The defendant did not comply with that order.

When questioned at the hearing about her time cards, the defendant explained that she worked from home approximately twenty-five hours per week and acknowledged that her time cards reflected that she, in almost all instances, worked no later than 3 p.m. on any given day even though her children remained in the after-school program until 4:45 p.m. The time cards admitted into evidence confirmed this testimony, revealing that she ended work on most days no later than 2:30 p.m., with many days ending earlier than that. When asked by the plaintiff's counsel whether her start time and end time were flexible, the defendant stated, "I believe so if I ask."[7]

In his closing argument, the plaintiff's counsel argued that the "crux of the matter, Your Honor, is the child care costs incurred by the defendant have to be work-related. And Your Honor has her time cards specifically, which I had to subpoena and get, which show that there are extremely rare circumstances where she is ever working past 3 p.m., maybe a handful of time[s] in an entire year and a half period of time worth of time cards. So, I don't think that it is reasonable or necessary for the defendant to incur these costs and ask that my client pay 76 percent of the bill when the costs could have been avoided and are not necessary in the first place. . . .

"Now, in terms of the morning program, though, Your Honor also heard testimony that she has enough flexibility in her job and that the kids get on the bus at about 8:10 in the morning where if she wanted to clock in at 8 o'clock in the morning and the kids get on the bus

---

[7] The plaintiff's counsel asked that, "if, for example, you asked your employer if you could clock in and begin your workday at 8:15, that may not be an issue with them. Is that fair to say?" The defendant responded: "I believe that the phones start at eight." The plaintiff's counsel then asked: "Okay. So, theoretically then, you could ask them to begin your workday at eight?" The defendant responded: "I could."

at 8:10, she could do that. But instead, she chooses to drop the kids off at the extended day program. She works from home. . . .

"[T]here is no testimony from the defendant that she wouldn't be able to do that, that she wouldn't be able to see them off onto the bus and have a ten minute gap of when she has to begin her work and begin taking calls versus dropping them off early in the morning for the extended day program. So, I don't think in the mornings either [is] a necessity. It's something that's simply a convenience for the defendant."

On January 19, 2023, the court, *Moses, J.*, issued an order stating: "The court finds by clear and convincing evidence that the plaintiff had notice of the court's orders on child support [docket entries ##168.00 and 169.00], which required the plaintiff to pay 76 percent of the child care for the minor children. The court finds by clear and convincing evidence that the order was clear and unambiguous in its direction for the plaintiff to pay a certain percentage towards child care. The court further finds that the plaintiff failed to comply with the aforesaid order in that he refused to pay child care expenses. The court finds the plaintiff's noncompliance wilful. The court ORDERS the plaintiff to reimburse the defendant for 76 percent [of] all child care expenses incurred during the time of his noncompliance. The court orders the defendant's counsel to file an affidavit regarding attorney's fees."

The plaintiff does not dispute that the court's dissolution judgment was clear and unambiguous as to his obligation to pay 76 percent of child care costs in accordance with the child support guidelines. Instead, the plaintiff claims that the court abused its discretion in issuing the contempt order because the defendant failed to establish by clear and convincing evidence that he

violated the order or that, if he did violate the order, that any such violation was wilful. We agree.

The record in this case makes clear that the plaintiff's child care contribution amount was calculated in accordance with the child support and arrearage guidelines on a worksheet filed with the court. Although the worksheet itself does not define or explain which child care costs qualify for contribution, the child support guidelines expressly address this. See Regs., Conn. State Agencies § 46b-215a-2c (g) (2). Specifically, in "[d]etermining the child care contribution," the regulations state that "[c]hild care costs shall qualify for a contribution from the noncustodial parent only to the extent that they: (i) are reasonable, (ii) are necessary to allow a parent to maintain employment, (iii) are not otherwise reimbursed or subsidized, and (iv) do not exceed the level required to provide quality care from a licensed source. . . ." Id. The preamble of the child support guidelines reiterates that child care costs "subject to noncustodial parent reimbursement must be reasonable and necessary for the custodial parent to maintain employment." Child Support and Arrearage Guidelines (2015), preamble, § (g) (5) (B), p. xiv; see also *Maturo* v. *Maturo*, 296 Conn. 80, 92–93, 995 A.2d 1 (2010) ("[t]he guidelines are accompanied by a preamble that is not part of the regulations but is intended to assist in their interpretation"). Consistent with these definitions of reimbursable child care costs, the arbitrator's recommendation concerning child support, which was incorporated into the judgment, required the plaintiff to pay the defendant for "day care *necessary for the defendant's work*." (Emphasis added.) The plaintiff in this case was therefore required to contribute 76 percent of child care costs that were reasonable and necessary to allow the defendant to maintain employment, that were not otherwise reimbursed or subsidized, and that did not exceed the amount required to provide quality care from a licensed source.

In the context of the defendant's motion for contempt, it was the defendant's burden, as the party seeking the order of contempt, to prove, by clear and convincing evidence, the plaintiff's allegedly wilful noncompliance with the child care order. See *Puff* v. *Puff*, 334 Conn. 341, 365, 222 A.3d 493 (2020). To satisfy that burden, the defendant was required to show by clear and convincing evidence that the child care costs for which she sought reimbursement were qualifying costs, namely, that they were, inter alia, necessary to allow her to maintain employment, and that the plaintiff wilfully violated his obligation to pay those costs. See Regs., Conn. State Agencies § 46b-215a-2c (g) (2); cf. *Schull* v. *Schull*, 163 Conn. App. 83, 97, 134 A.3d 686 ("there has been no showing [by the plaintiff] that these bills are 'unreimbursed medical expenses' for which she is entitled to be 'reimbursed' by the defendant"), cert. denied, 320 Conn. 930, 133 A.3d 461 (2016). On the basis of our review of the record in this case, we conclude that she failed to satisfy her burden of proving by clear and convincing evidence that the plaintiff violated the order much less *wilfully* violated the order.

At the hearing on the motion for contempt, the plaintiff introduced into evidence the defendant's time card reports that he subpoenaed from the defendant's employer, which unambiguously showed that the defendant ended her workday earlier than 3 p.m. nearly every day. The plaintiff's counsel also called the defendant as a witness. In response to questions from the plaintiff's counsel about whether her work hours were flexible, the defendant testified that her employer likely would be flexible with respect to when she started and finished her workday. The defendant also testified that she runs personal errands and does grocery shopping some days when the children are in the after-school program. Although the defendant testified that every forty-five days or so she needed to attend a work meeting in

person in Shelton for "five to seven hours," this infrequent commitment does not demonstrate that the children's enrollment in the before and after-school program five days a week was reasonable and necessary for her to maintain her employment. In short, she made little effort at the hearing to show that the child care costs in question were necessary to allow her to maintain her employment, leaving an evidentiary lacunae linking the child care costs to her work schedule. On this record, we conclude that she failed to satisfy her burden of proving by clear and convincing evidence that the child care costs for which she sought reimbursement were qualifying costs. It necessarily follows that she also failed to prove that the plaintiff violated the court's child care order because he had no obligation to reimburse her for nonqualifying child care costs.

Furthermore, even if the defendant had satisfied her burden of demonstrating that the costs for which she sought reimbursement were qualifying costs and that the plaintiff violated the support order by failing to reimburse her for those costs, we cannot, on this record, conclude that there was clear and convincing evidence that the plaintiff *wilfully* violated the order. The record shows that, for approximately one year, the plaintiff asked the defendant for documentation verifying that the child care expenses for which she sought reimbursement were necessary for her to maintain employment. The defendant failed to comply with those requests and the plaintiff suspended reimbursements. Thus, at best, the record demonstrates that the plaintiff ceased reimbursing the defendant for child care expenses due to a good faith dispute over whether those costs were eligible for reimbursement under the child support regulations. See, e.g., *In re Leah S.*, supra, 284 Conn. 694 ("we must . . . determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the

trial court's determination of whether the violation was wilful *or excused by a good faith dispute or misunder-standing*" (emphasis added)). Accordingly, the trial court's judgment of contempt must be reversed and the orders stemming from that judgment are vacated.

B

We next address the plaintiff's claim that the trial court erred in denying his motion for contempt. He contends that the defendant admitted that she failed to comply with a discovery order and that the court should not have credited her excuse for failing to comply with that order. He further contends that attempts by the defendant's attorney to assume blame for the defendant's noncompliance should not be countenanced. The plaintiff argues that the record is clear that the defendant's noncompliance was wilful and that the court erred in concluding that it was not. We are not persuaded.

The following additional facts and procedural history are relevant for our resolution of this claim. On December 6, 2022, the plaintiff filed a motion for contempt regarding the defendant's alleged failure to comply with the plaintiff's discovery requests. Specifically, he alleged that he filed a postjudgment motion for modification of alimony, child support, and visitation on March 15, 2021, and that the plaintiff served on the defendant his request for disclosure and production postjudgment on April 6, 2021. He further alleged that, although the defendant partially complied with the April 6, 2021 request, she did not fully comply. In addition, he alleged that, on September 20 and October 18, 2022, he requested via email updated production documents from the defendant for the period December 7, 2021, to September 20, 2022. According to the plaintiff, as of December 6, 2022, the defendant had not produced the requested updated documents to the plaintiff. The

plaintiff noted that he filed a motion for compliance on November 4, 2022, and that the defendant was ordered to comply fully with all outstanding discovery requests on or before November 22, 2022. Because the defendant allegedly had not complied with the court's order to comply with producing all outstanding discovery, the plaintiff requested, inter alia, an order of contempt.

At the January 17, 2023 hearing on the motion for contempt, the defendant acknowledged that there was a motion to compel her discovery responses and a subsequent ruling issued by Judge Truglia ordering her to produce all responsive documents by November 20, 2022. When asked by the plaintiff's counsel whether she complied with Judge Truglia's order, she testified that she did not. She acknowledged that her noncompliance caused the plaintiff's counsel to subpoena her employment records from her employer and certain financial records from her bank. In response to questions from her own counsel, the defendant testified that "I guess you guys called me several times—I never got a call on my phone—or emailed me, and I think you had the wrong email." The defendant's counsel then asked: "Did we discover just recently that our emails were going into a spam or junk email?" The defendant responded, "Yes," and indicated that she had not received emails from her counsel. The defendant's counsel then asked the defendant, "You weren't physically in court before Judge Truglia, were you?" The defendant answered that she was not. When asked by her counsel whether his firm's attempts to communicate Judge Truglia's orders got through to the defendant, the defendant testified, "No, they did not."

On January 19, 2023, the court issued an order denying the plaintiff's motion for contempt. It stated that it did "not find evidence that the defendant's noncompliance was wilful."

The plaintiff claims that the court erred in denying his motion for contempt because the court improperly determined that the defendant's noncompliance was not wilful. He contends that the defendant's uncorroborated excuse that she lacked knowledge of the trial court's orders because the emails from her attorney were going into her spam folder while at the same time the calls from her attorney were not being recorded on her cell phone, are simply too far-fetched to be deemed credible. The plaintiff points out that the defendant was able to speak to her attorney to authorize the filing of a motion for contempt on September 16, 2022, but nevertheless claims that, four days later, both her email and her phone stopped receiving communications from her attorney for three months. The plaintiff therefore claims that the court abused its discretion in concluding that the defendant's noncompliance was not wilful. We disagree.

There is evidence in the record that the defendant did not have knowledge of the discovery order for which she did not comply because she did not receive correspondence and communications from her attorney. That evidence is sufficient to support the court's finding that the plaintiff had failed to prove by clear and convincing evidence that the defendant's noncompliance was wilful. See *In re Leah S.*, supra, 284 Conn. 692 (judgment of civil contempt is improper if "the contemnor, through no fault of his [or her] own, was unable to obey the court's order" (internal quotation marks omitted)). Although the plaintiff argues that the defendant's testimony was not credible, this court does not retry the facts or evaluate the credibility of witnesses. Rather, "[t]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Kasowitz*

v. *Kasowitz*, 140 Conn. App. 507, 512, 59 A.3d 347 (2013). On this record, we cannot conclude that the court abused its discretion in concluding that the defendant's noncompliance was not wilful.

## II

The plaintiff's final claims pertain to the court's denial of his motion for modification as it relates to alimony and child support. As to the alimony portion of his motion for modification, the court concluded that the plaintiff had failed to prove a substantial change in circumstances "given the fact that the defendant is earning well under $30,000 a year." The plaintiff claims that the court's sole finding that the defendant "is earning well under $30,000 a year" is clearly erroneous, as the documentary evidence introduced at the hearing showed that defendant was in fact making more than $30,000.

As to the plaintiff's motion for modification of child support, he requested that his child care contribution and unreimbursed medical contributions be reduced.[8] The court denied the motion for modification of child support, indicating that it was "improper given the fact that the plaintiff [was] not seeking to amend the child support award in its entirety." The plaintiff claims that the court erred, as a matter of law, in concluding that he could not seek modification as to only one or two components of the child support award without seeking modification of the other components of the child support award. We address the plaintiff's claims in turn.

We begin with our well known standard of review. Our appellate courts "will not disturb the trial court's

---

[8] In the plaintiff's motion for modification filed with the court, he argued that the circumstances warranted modification of the "child support orders, including the orders concerning child care, health care expenses and extracurricular activity expenses." During the hearing on his motion for modification, the plaintiff limited his modification request to child care and unreimbursed medical and dental expenses.

ruling on a motion for modification of alimony or child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 200 Conn. App. 229, 245–46, 240 A.3d 688 (2020), cert. denied, 336 Conn. 909, 244 A.3d 561 (2021). "Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Moore* v. *Moore*, 216 Conn. App. 179, 189, 283 A.3d 994 (2022). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . To the extent that the [plaintiff] has raised legal issues within his overarching claim[s], we review those claims de novo." (Citation omitted; internal quotation marks omitted.) *Giordano* v. *Giordano*, 200 Conn. App. 130, 135, 238 A.3d 113, cert. denied, 335 Conn. 970, 240 A.3d 286 (2020).

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony [or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To

obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Internal quotation marks omitted.) *De Almeida-Kennedy* v. *Kennedy*, 224 Conn. App. 19, 30–31, 312 A.3d 150 (2024).

A

The plaintiff claims that the court's determination that there was not a substantial change in circumstances to modify alimony was predicated on the sole finding that the defendant "is earning well under $30,000 a year." He further claims that, because the court's sole finding with respect to his motion was clearly erroneous, the court abused its discretion in denying his motion and that reversal is warranted. We agree.

In the present case, the defendant filed with the court a financial affidavit in which she averred that her gross income from wages per week was $450, or $23,400 per year. The plaintiff, however, introduced undisputed documentary evidence subpoenaed from the defendant's employer that refuted the defendant's financial affidavit. Specifically, the defendant's 2021 W-2 showed that the defendant made $27,416.75 from wages that year. The defendant testified, however, that she did not start her employment until February, 2021, meaning that her gross earnings on her 2021 W-2 reflected only ten months of work. The plaintiff also introduced into evidence the defendant's pay stubs from 2022 for the period from January 1 through December 3, 2022. The pay stubs show that the defendant earned $30,629.25 by December 3, 2022, with remaining paychecks to follow. When presented with this evidence at the hearing, the

defendant conceded that her gross weekly pay was approximately $625 instead of the $450 that she had indicated on her financial affidavit. Furthermore, during closing arguments, the defendant's counsel explained to the court that "[m]y client earns about $30,000 a year." The court's finding that the defendant was "earning well under $30,000 a year" was therefore clearly erroneous.

Because the court's finding that there was not a substantial change in circumstances was predicated solely on the court's clearly erroneous factual finding, we are left with no choice but to conclude that the court abused its discretion in denying the motion for modification as it pertained to alimony. See, e.g., *Berman* v. *Berman*, 203 Conn. App. 300, 313, 248 A.3d 49 (2021) ("lack of an evidentiary basis in the record for the court's finding of an exchange of assets or equity for lifetime alimony, on which its ultimate decision denying the plaintiff's motion for modification was based at least in part, compels us to find that the court abused its discretion in denying the plaintiff's motion"). As a result, this matter must be remanded to the trial court for a new hearing on the plaintiff's motion for modification as it relates to alimony. See *Steller* v. *Steller*, 181 Conn. App. 581, 598, 187 A.3d 1184 (2018) (because trial court's decision on motion for modification was based, in part, on clearly erroneous finding, case was remanded for new hearing on motion for modification). At the rehearing, the trial court must determine whether the plaintiff established a substantial change in circumstances and, if so, what modification of alimony, if any, is appropriate.[9]

---

[9] Superior Court judges making postjudgment dissolution rulings are encouraged, in accordance with our rules of practice, to set forth in detail the factual and legal bases for their rulings, including an explanation of the evidence considered and relied upon and the credibility determinations of witnesses. See Practice Book § 6-1 (a) ("[t]he judicial authority's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor"); Practice Book § 64-1 (a) ("[t]he court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor").

## B

The plaintiff's final claim is that the court erred in denying his motion to modify child support. He notes that the court's sole stated basis for denying his motion was that " 'the plaintiff's request to modify only the child support order to reduce his contributions to child care expenses and health care expenses' " was " 'improper given the fact that the plaintiff [was] not seeking to amend the child support award in its entirety.' " He contends that there is no authority for the court's conclusion. We agree.

The question of whether, and to what extent, a child support order can be modified is a question of law over which this court's review is plenary. See *Maturo* v. *Maturo*, supra, 296 Conn. 88.

The law is clear that child support in Connecticut is generally comprised of four components, or awards, which include current support payments, health care coverage, child care contribution, and periodic payments on arrearages. Indeed, General Statutes § 46b-215b (a) provides in relevant part that "[t]he child support and arrearage guidelines . . . shall be considered in all determinations of child support award amounts, including any current support, health care coverage, child care contribution and past-due support amounts, and payment on arrearages and past-due support within the state. . . ." The law further provides in relevant part: "In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. . . ." General Statutes § 46b-215b (a).

The regulations reiterate the mandates of § 45b-215b. They define "child support award" as "the entire payment obligation of the noncustodial parent, as determined under the child support and arrearage guidelines,

and includes current support payments, health care coverage, child care contribution and periodic payments on arrearages." Regs., Conn. State Agencies § 46b-215a-1 (6). The regulations further provide in relevant part that "[t]he current support, health care coverage contribution, and child care contribution amounts calculated under section 46b-215a-2c of the Regulations of Connecticut State Agencies, and the amount of the arrearage payment calculated under section 46b-215a-3a of the Regulations of Connecticut State Agencies, are presumed to be the correct amounts to be ordered. . . ." Regs., Conn. State Agencies § 46b-215a-5c (a).

Section 46b-86 (a) governs the modification of a child support order after the date of a dissolution judgment. It provides in relevant part: "[A]ny final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to [General Statutes §] 46b-215a, unless there was a specific finding on the record at a hearing, or in a written judgment, order or memorandum of decision of the court, that the application of the guidelines would be inequitable or inappropriate. . . ." General Statutes § 46-86 (a). This court has explained that, pursuant to that provision, a court may modify a child support order in one of two alternative circumstances: upon a showing of a substantial change in the circumstances of either party or a substantial deviation from the child support guidelines. See *Brown* v. *Brown*, 199 Conn. App. 134, 153, 235 A.3d 555 (2020); *Righi* v. *Righi*, 172 Conn. App. 427, 433, 160 A.3d 1094 (2017).

The plaintiff argues that there is no authority for the court's conclusion that it was improper for him to seek

modification of just one or two components of the child support award. We agree. On the basis of our review of the modification statute and the relevant case law, we have found no authority prohibiting a party from seeking to modify a child support award through a change to just one or two components of the total child support award instead of seeking to modify *all* components of a child support award. Significantly, § 46b-86 (a) includes no such limitation. That statute simply provides that a court may modify "*any* final order for the periodic payment of . . . support" upon the showing, inter alia, of a substantial change in the circumstances of either party. (Emphasis added.) General Statutes § 46b-86 (a). There can be little dispute that orders requiring a noncustodial parent to pay a percentage of child care expenses and unreimbursed medical expenses are orders of "support" subject to modification under § 46b-86 (a). Although child care orders and health care orders are often included in an omnibus award containing the orders as to each of the four components of child support, we see no reason why a party cannot seek modification of some but not all of the components that comprise the total child support award.

Of course, a party seeking modification of only one or two of the child support components must still demonstrate a substantial change in circumstances. See *Brown* v. *Brown,* supra, 199 Conn. App. 157 ("[t]he party seeking modification bears the burden of showing the existence of a substantial change in the circumstances" (internal quotation marks omitted)). If a court finds a substantial change has occurred, it may then properly consider what, if any, modification is warranted. See *Berman* v. *Berman,* supra, 203 Conn. App. 304; *Syragakis* v. *Syragakis,* 79 Conn. App. 170, 174, 829 A.2d 885 (2003).

Because the court improperly denied the plaintiff's motion for modification on the basis that he sought to reduce the order of support through a reduction to just two components of the total child support award, we must remand the matter to trial court to determine whether the plaintiff established a substantial change in circumstances and, if so, whether and to what extent a modification of the child support award is appropriate.

The judgment of contempt is reversed and the orders stemming from that judgment are vacated, and the case is remanded with direction to deny the defendant's motion for contempt; the judgment denying the plaintiff's motion to modify alimony and child support is reversed and the case is remanded for further proceedings consistent with this opinion; and the judgment denying the plaintiff's motion for contempt is affirmed.

In this opinion the other judges concurred.