******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## WALDEN H. MATHEWS *v.* SUSAN M. MATHEWS
### (AC 47372)

Elgo, Moll and Lavine, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed from the judgment of the trial court denying his postdissolution motion for contempt and granting the defendant's postdissolution motion for contempt. He claimed, inter alia, that the court improperly denied his motion because the defendant prevented him from retrieving certain of his property from the marital residence and wilfully violated court orders by disposing of that property. *Held*:

The trial court did not abuse its discretion in denying the plaintiff's postdissolution motion for contempt with respect to his claim that the defendant violated the court's order to provide him access to the marital residence to retrieve his personal property, as the court's property distribution orders were ambiguous as to whether the property at issue belonged to the plaintiff, and the record demonstrated that a dispute existed between the parties as to the ownership of that property.

The trial court did not abuse its discretion in denying the plaintiff's postdissolution motion for contempt with respect to his claim that the defendant violated the court's property distribution orders, as the court reasonably could have found, on the basis of the evidence adduced at the evidentiary hearing on the motion, that the defendant did not wilfully violate the court's orders when she disposed of the property at issue for no value after having offered the plaintiff the opportunity to retrieve that property.

The trial court did not abuse its discretion in granting the defendant's postdissolution motion for contempt, as evidence in the record substantiated the court's finding that the plaintiff wilfully ignored the court's escrow order requiring him to pay $15,000 to the defendant's counsel on or before a specified date.

Argued February 19—officially released May 13, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, and tried to the court, *Heller, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Vizcarrondo, J.*,

rendered judgment granting the defendant's postjudgment motion for contempt and denying the plaintiff's postjudgment motion for contempt, from which the plaintiff appealed to this court. *Affirmed.*

*Walden H. Mathews*, self-represented, the appellant (plaintiff).

*Opinion*

ELGO, J. In this postdissolution matter, the self-represented plaintiff, Walden H. Mathews, appeals from the judgment of the trial court granting the motion for contempt filed by the defendant, Susan M. Mathews, and denying the motion for contempt filed by the plaintiff. On appeal, the plaintiff claims that the court improperly (1) denied his motion for contempt regarding the disposition of personal property located in the basement of the marital residence and (2) granted the defendant's motion for contempt regarding a court order that obligated him to escrow $15,000 with the defendant's counsel. We affirm the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 1990, and three children were born of the marriage. Following the subsequent breakdown of the marriage, the plaintiff commenced a dissolution action in 2017. In response, the defendant filed an answer and a cross complaint, and an eight day trial followed. On March 20, 2020, the court rendered judgment dissolving the parties' marriage, finding that it had broken down irretrievably.

As part of the judgment of dissolution, the court made numerous factual findings and entered various orders. The court found, inter alia, that the plaintiff had not paid alimony to the defendant during the pendency of the dissolution action and awarded the defendant lump sum alimony in the amount of $90,000. With respect to that award, the court ordered the plaintiff to make three

payments of $30,000 to the defendant on or before April 15, May 15 and June 15, 2020.[1]

The court also found that the marital estate contained two properties. The court found that the plaintiff had inherited a cottage on a lake in Acton, Maine years earlier, which had a fair market value of $450,000. In its property distribution orders, the court awarded the plaintiff "ownership of the Maine property, free and clear of any claim by the defendant."

With respect to the parties' marital residence on Cove Avenue in Norwalk, the court found that it was an "antique Victorian home" that had undergone various renovations which, at the time of trial, had not been completed. In light of those "unfinished interior renovations," the court found that the property had a fair market value of $675,000. The court also found that the property was encumbered by a $290,000 mortgage. The court ordered the sale of the Cove Avenue property and stated in relevant part that "the sale proceeds shall first be applied to pay in full the following: the mortgage, real estate commissions, and other normal and customary closing costs. The remaining sale proceeds shall be paid to the defendant."

As the court noted, the parties "agreed that it will cost approximately $30,000 to complete the repairs and improvements to the [Cove Avenue] property . . . before [it] can be sold. Each party has also agreed to contribute $15,000 toward the cost of the repairs and improvements [required] to enhance its marketability."

---

[1] When the plaintiff failed to make the alimony payment due on April 15, 2020, the defendant filed a postjudgment motion for contempt on April 27, 2020. While that motion was pending, the plaintiff filed an appeal challenging the propriety of the court's March 20, 2020 judgment of dissolution. This court dismissed that appeal as untimely on September 16, 2020. On September 21, 2020, the plaintiff paid his alimony obligation to the defendant in full. In light of that payment, the court denied the defendant's April 27, 2020 motion for contempt. That motion for contempt is not at issue in this appeal.

The court thus ordered each party to "send $15,000 to counsel for the defendant . . . to be held in escrow pending the work on the Cove Avenue property." The court awarded the defendant "exclusive possession of the Cove Avenue property until the closing of the sale of the property" and further ordered that "[t]he parties shall agree upon reasonable dates and times for the plaintiff to have access to the Cove Avenue property to remove his personal property."

In its property distribution orders, the court awarded each of the parties certain property.[2] With respect to personal property generally, the court stated in relevant part: "Each party is awarded his or her own clothing, jewelry, and personal items such as photographs, books, and memorabilia. . . . *The parties shall divide all . . . other personal property in the Cove Avenue property to their mutual satisfaction* on or before April 15, 2020. This date may be extended to and including the closing date of the sale of the Cove Avenue property in the event that the listing broker recommends that certain furniture and furnishings remain in the Cove Avenue property to facilitate its sale. *If the parties are not able to agree on the disposition of specific items, those items shall be sold at fair market value on or before the closing date.* . . . [T]he net proceeds of such sale shall be shared equally between the parties." (Emphasis added.)

On October 29, 2020, the plaintiff filed a postjudgment motion for contempt, in which he alleged, inter alia, that the defendant had not allowed him to retrieve "tools and other belongings situated in the basement of the Cove Avenue property" when he visited the property on September 11, 2020. One week later, the defendant

---

[2] For example, the court awarded the plaintiff "the contents of the Maine property" and awarded the defendant a Boston Whaler boat and trailer "free and clear of any claim by the plaintiff."

filed a motion for contempt that was predicated, in part, on the plaintiff's failure to make the $15,000 escrow payment to her legal counsel for repairs to the Cove Avenue property, as ordered by the court.

The court held an evidentiary hearing on the parties' respective motions for contempt on February 7, 2023.[3] The court thereafter issued separate orders on those motions on June 7, 2023. With respect to the defendant's motion for contempt, the court found that the order requiring the plaintiff to pay the defendant's counsel $15,000 on or before April 15, 2020, for home repairs to the Cove Avenue property was clear and unambiguous. The court further found that the plaintiff had not complied with that order, stating in relevant part: "There is no dispute that the requisite funds were not tendered to [the defendant's counsel]. The plaintiff testified that he instead paid the defendant $8000 directly, rather than through counsel, as ordered." The court thus concluded that the defendant had demonstrated wilful noncompliance on the part of the plaintiff and ordered further proceedings "to properly determine (1) the cost of repairs actually expended by the defendant, (2) the attorney's fees expended in prosecuting the defendant's motion, and (3) the appropriateness of statutory interest on any loss amount."

In its separate order on the plaintiff's motion for contempt, the court found that the order in question was "not clear and unambiguous as to what constituted the plaintiff's personal property." The court further

---

[3] On April 5, 2023, the plaintiff filed what he titled a "supplemental motion for contempt," to which he appended copies of email communications between the parties and a detailed list of what he characterized as "personal belongings not retrieved" from the Cove Avenue property and their purported values. None of those documents was offered or admitted into evidence at the February 7, 2023 evidentiary hearing, and there is no indication in the court's June 7, 2023 orders that the court considered them in any manner in acting on the parties' motions for contempt.

found that the plaintiff had not established wilful non-compliance on the part of the defendant and denied the motion for contempt. The plaintiff thereafter filed motions for reconsideration of both contempt rulings, which the court denied, and this appeal followed.[4]

As a preliminary matter, we note certain principles relevant to this appeal. "[C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364–66, 222 A.3d 493 (2020); see also *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007) ("the abuse of discretion standard applies to a trial court's decision on a motion for contempt").

I

On appeal, the plaintiff claims that the court improperly denied his motion for contempt. His claim is twofold in nature. The plaintiff first alleges that the defendant improperly precluded him from retrieving tools

---

[4] The defendant appeared, but has not participated, in this appeal. Because she did not file an appellate brief, we ordered that the appeal shall be considered on the basis of the plaintiff's brief, oral argument, and the record. See, e.g., *Ammar I.* v. *Evelyn W.*, 227 Conn. App. 827, 830 n.2, 323 A.3d 1111 (2024).

and other equipment that belonged to him from the basement of the Cove Avenue property. He then argues that the defendant wilfully violated the court's property distribution orders by disposing of that property. We disagree with both contentions.

A

We begin with the question of whether the tools and equipment in the basement of the Cove Avenue property constitute personal property awarded to the plaintiff under the terms of the dissolution judgement. In that judgment, the court ordered in relevant part that "[t]he parties shall agree upon reasonable dates and times for the plaintiff to have access to the Cove Avenue property to remove his personal property." At the same time, the court's orders regarding personal property are ambiguous as to whether the tools and equipment at issue were, in fact, the personal property of the plaintiff. Although the court specifically awarded the plaintiff other property; see footnote 2 of this opinion; it made no mention of tools or equipment located in the basement of the Cove Avenue property.

Moreover, the court's property distribution orders expressly contemplate the sale of any items of personal property located in the Cove Avenue property that the parties could not amicably divide. The court ordered: "Each party is awarded his or her own clothing, jewelry, and personal items such as photographs, books, and memorabilia. . . . The parties shall divide all . . . other personal property in the Cove Avenue property to their mutual satisfaction . . . . If the parties are not able to agree on the disposition of specific items, those items shall be sold at fair market value on or before the closing date. . . . [T]he net proceeds of such sale shall be shared equally between the parties."

At the February 7, 2023 evidentiary hearing, the defendant testified that the tools and equipment in the basement "were purchased with joint funds" during the parties' marriage and opined that "that machinery was jointly owned." For that reason, the defendant testified that she told the plaintiff that "he could retrieve all of his personal belongings" from the Cove Avenue property on September 11, 2020, and that, "after he retrieved his personal belongings," the parties then "could go into the basement and discuss" how the tools "would be disposed of." In its order on the plaintiff's motion for contempt, the court credited the defendant's testimony and found that she "reasonably believed that the items in the basement, particularly valuable tools, were not the plaintiff's 'personal property,' but marital assets in which she had at least some financial interest." Moreover, the record indicates, and the plaintiff does not dispute, that the defendant allowed the plaintiff to retrieve other personal belongings from his office in the Cove Avenue property over the course of several hours on September 11, 2020, as well as a toolbox from the basement that had belonged to his father. In light of that evidence, the court found that the defendant's "objection to surrendering" the tools and equipment in the basement had been asserted in good faith.

We conclude that the court's property distribution orders are ambiguous as to whether the tools and equipment at issue were, in fact, the personal property of the plaintiff. Moreover, the record demonstrates that a dispute existed between the parties as to ownership of the tools and equipment in question. For that reason, the plaintiff's contention that the defendant violated the court's order to provide him access to the Cove Avenue property to remove "his personal property" is unavailing.

B

The plaintiff also claims that the defendant wilfully violated the court's orders by disposing of the tools

and equipment from the basement of the Cove Avenue property. We do not agree.

In its property distribution orders, the court specifically contemplated the scenario in which the parties could not agree on the division of personal property located in the marital residence and ordered as follows: "The parties shall divide all . . . other personal property in the Cove Avenue property to their mutual satisfaction . . . . If the parties are not able to agree on the disposition of specific items, those items shall be sold at fair market value on or before the closing date. . . . [T]he net proceeds of such sale shall be shared equally between the parties." Because the parties did not reach an agreement on how to divide the tools and equipment in the basement of the Cove Avenue property, they were required, pursuant to the clear and unambiguous language of that order, to sell those items at fair market value and share the proceeds equally. Accordingly, the first prong of the legal standard that governs our review of a contempt ruling is satisfied. See *In re Leah S.*, 284 Conn. 685, 693, 935 A.2d 1021 (2007).

The question, then, is whether the court abused its discretion in concluding that the plaintiff had not established wilful noncompliance on the part of the defendant with respect to that order. In considering that question, we are mindful that "[a] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful. . . . [A] contempt finding is not automatic and depends on the facts and circumstances underlying it. . . . [I]t is well settled that the inability of [a] defendant to obey an order of the court, without fault on his part, is a good defense to the charge of contempt . . . . The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual

basis to explain the failure." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 727, 209 A.3d 1 (2019).

In denying the plaintiff's motion for contempt, the court made a number of factual findings relevant to the plaintiff's claim. The court found that "the defendant reasonably believed that the items in the basement . . . were not the plaintiff's 'personal property,' but marital assets in which she had at least some financial interest." The court further found that the defendant had asserted a good faith objection to surrendering the tools and equipment in the basement when the plaintiff visited the Cove Avenue property on September 11, 2020.

Following the filing of the plaintiff's October 29, 2020 motion for contempt, the tools and equipment at issue remained on the Cove Avenue property. The court found that, in the fall of 2021, as the Cove Avenue property "was being prepared for sale, the defendant invited the plaintiff to retrieve the tools [and other equipment from the basement]. She testified credibly that she had by that point abandoned any claim to the disputed items and simply wanted them removed." Those factual findings are supported by the evidence in the record and, therefore, are not clearly erroneous. See, e.g., *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017). Moreover, we cannot disturb the court's credibility determination with respect to the defendant's testimony. See, e.g., *N. R.* v. *M. P.*, 227 Conn. App. 698, 730, 323 A.3d 1142 (2024) (appellate courts must defer to trier of fact's assessment of credibility). At the February 7, 2023 evidentiary hearing, the plaintiff acknowledged that the defendant had offered him the opportunity to retrieve the tools and equipment in the basement in the fall of 2021 and testified that he declined to do so.

In addition, the court found that the tools and equipment "were ultimately disposed of in October, 2021, by

workmen clearing out the basement" in preparation for the sale of the Cove Avenue property and that the defendant "obtained no value for them." Those findings, too, are substantiated by the defendant's testimony at the evidentiary hearing, which the court, as trier of fact, was entitled to credit.[5] See, e.g., *Kammili* v. *Kammili*, 197 Conn. App. 656, 672, 232 A.3d 102 ("the [trial] court, as the trier of fact and thus the sole arbiter of credibility, [is] free to accept or reject, in whole or in part, the testimony offered by either party" (internal quotation marks omitted)), cert. denied, 335 Conn. 947, 238 A.3d 18 (2020).

In reviewing a court's contempt ruling, "[t]his court will not disturb the trial court's orders unless it has

---

[5] At the evidentiary hearing, the defendant testified that, in the fall of 2021, she told the plaintiff that "he could . . . keep everything if he just wanted to come and move it out, and just leave the basement clean, and he declined my request. He said that he no longer wanted anything, and so I don't see how he can be claiming . . . any money from me because I did give him [the] opportunity to come and get his things [from the basement]."

In response, the court noted that the property distribution orders required the parties to sell any disputed items from the Cove Avenue property and inquired as to whether the tools and equipment in the basement had been sold. The defendant then testified: "[W]hen [the plaintiff] said that he didn't want any of the equipment, I contacted . . . a contractor who recently moved in across the street . . . . I asked him to come over to evaluate the equipment and the value of the equipment. And to see if he was interested or anybody in . . . his industry would be interested in purchasing the equipment. He went over all of the tools [in the basement] and he said that they were so outdated that there was really no value to them. . . . [A]fter speaking to some of his colleagues [he confirmed] that they weren't really worth very much. He said . . . that the best I could do was to actually trade the work of . . . removing them from the house for payment to just removing them from the house. So, actually, I didn't make any money. I didn't sell them. I didn't make any money from them. If I had made money, I would have shared it with [the plaintiff]. But . . . I did offer this to [the plaintiff] to come and take it all away if you wanted first. I offered him to first to take it all away and just have it. Just take it, take it all out and to just leave [the] basement broom clean, that's all I asked and [the plaintiff] declined, so that's what I did. I found somebody to take all of the equipment out of the house, and leave the basement broom clean, and I did not make one dime from any of that."

abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Brody* v. *Brody*, 145 Conn. App. 654, 662, 77 A.3d 156 (2013). Applying that deferential standard of review, we conclude that the court reasonably could have found, on the basis of the evidence adduced at the February 7, 2023 hearing, that the defendant did not wilfully violate the court's property distribution orders when she disposed of the tools and equipment in the basement for no value in the fall of 2021. Accordingly, the court did not abuse its discretion in denying the plaintiff's motion for contempt.

## II

The plaintiff also claims that the court improperly granted the defendant's November 4, 2020 motion for contempt regarding a court order that obligated him to escrow $15,000 with the defendant's counsel.[6] We disagree.

---

[6] The plaintiff alternatively argues that the court improperly granted the motion for contempt because the defendant "has unclean hands." In his April 6, 2021 objection to the defendant's motion for contempt, the plaintiff alleged, in a single sentence, that, "[a]s of September 25, 2020, the defendant had not funded her share of the 'escrow,' and so the 'clean hands' doctrine applies." The court never ruled on that objection and neither the doctrine of unclean hands nor the issue of the defendant's compliance with the escrow order were raised at the February 7, 2023 evidentiary hearing on the defendant's motion for contempt. The court likewise did not address the issue of unclean hands or make any factual findings with respect thereto in its June 7, 2023 order granting the defendant's motion for contempt. The plaintiff thereafter did not seek an articulation of that judgment, rendering the record inadequate for review. See *Rissolo* v. *Betts Island Oyster Farms, LLC*, 117 Conn. App. 344, 359, 979 A.2d 534 (2009) (record was inadequate to review special defense of unclean hands "[b]ecause the court's [ruling]

In its March 20, 2020 judgment of dissolution, the court found that the Cove Avenue property had various unfinished renovations. The court also noted that the parties had "agreed that it will cost approximately $30,000 to complete the repairs and improvements to the [Cove Avenue] property . . . before [it] can be sold. Each party has also agreed to contribute $15,000 toward the cost of the repairs and improvements [required] to enhance its marketability." The court thus ordered that, "[o]n or before April 15, 2020, the plaintiff and the defendant shall each send $15,000 to counsel for the defendant . . . to be held in escrow pending the work on the Cove Avenue property."

That court order clearly and unambiguously required the plaintiff to tender payment of $15,000 to the defendant's counsel on or before April 15, 2020. It is undisputed that the plaintiff did not do so. At the February 7, 2023 evidentiary hearing, the plaintiff testified that he had declined to make any payment to the defendant's counsel because he believed that the court's escrow order was improper, arguing that the defendant's counsel did not qualify as an escrow agent under Connecticut law.[7] At that hearing, the following colloquy occurred between the court and the plaintiff:

is devoid of any findings or analysis on the issue, and because the petitioner did not seek an articulation" (internal quotation marks omitted)). We therefore decline to review that ancillary contention.

[7] At the February 7, 2023 hearing, the plaintiff testified that, in his view, "there [is] a jurisdiction problem with [the escrow] order as written, and it's seeded in [contract] law. And the actual definition of escrow, and escrow agreement, and a bona fide escrow agent for which [the defendant's counsel] does not qualify according to the terms of those laws."

In his appellate brief, the plaintiff elaborated on the basis of his objection to the court's escrow order, stating in relevant part: "[The escrow order] did not adequately define the responsibilities of the escrow agent, and thus did not adequately protect his interest in making sure that the escrowed funds were actually spent on the repair of the [Cove Avenue property]. . . . [The escrow order] does not require the escrow agent to maintain *any* records regarding (1) how much money she has received from the parties, or (2) how much money the defendant has actually spent on repairs and improvements for the property. Nor does the [escrow order] require the

"The Court: [Y]ou didn't have—you simply disagreed with the [propriety of the escrow] order, correct, you didn't have a misunderstanding as to what it meant?

"[The Plaintiff]: [T]hat is correct. I believe that [the trial court lacked] the authority to force me into what is effectively a private contract with someone under terms that I had no control over."

The plaintiff also testified that his claim that the trial court lacked authority to enter the escrow order "was part of . . . the appeal that [he] filed in July of 2020." The record indicates that this court dismissed that appeal in September, 2020. Following that dismissal, the plaintiff did not make the payment required pursuant to the court's escrow order, as he did with respect to the court's alimony order. See footnote 1 of this opinion. Instead, the plaintiff paid $8000 to the defendant directly after she filed her November 4, 2020 motion for contempt and declined to make further payment unless the defendant presented him with invoices for the repair work performed on the Cove Avenue property.[8]

In light of the foregoing, we conclude that the evidence in the record substantiates the court's finding

escrow agent to show such records to the plaintiff upon request, or at any time. . . . In addition, the March 20 order does not include any instructions to the escrow agent regarding whether, or when, she is required to return any excess funds to the plaintiff. The consequences of this omission are obvious: the escrow agent, who is the defendant's attorney . . . could simply retain any excess funds immediately, causing substantial harm to the plaintiff." (Emphasis in original.) The plaintiff also asserted, without citation to any legal authority, that "Connecticut law [does not] recognize an escrow agreement in which a party both deposits and receives the same asset as a valid escrow agreement."

[8] Although the plaintiff filed a motion to modify the escrow order in March, 2021, he withdrew that motion prior to the hearing on the defendant's motion for contempt. Moreover, in that motion, the plaintiff did not raise any objection regarding the propriety of the escrow order or the legality of the defendant's counsel acting as an escrow agent; he simply requested that the escrow order be amended to prevent him from "losing any unspent funds."

that the plaintiff wilfully ignored the court's escrow order that required him to pay $15,000 to the defendant's counsel on or before April 15, 2020. The court, therefore, did not abuse its discretion in granting the defendant's motion for contempt.

The judgment is affirmed.

In this opinion the other judges concurred.